**Kathy CROMER, Plaintiff-Appellant,**

**v.**

**Minnie SEFTON and Westfield Insurance Company, Defendant-Appellees.**

**No. 1–184A9.**

Court of Appeals of Indiana,
First District.

Sept. 18, 1984.

Ordered Published Nov. 26, 1984.

Mark W. McNeely, J. Lee McNeely, McNeely & Sanders, Shelbyville, for plaintiff-appellant.

Karl F. Walker, Rolfes, Garvey, Walker & Robbins, Greensburg, for defendants-appellees.

## MEMORANDUM DECISION

NEAL, Presiding Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Kathy Cromer, appeals a summary judgment entered by the Decatur Circuit Court in favor of Westfield Insurance Company.

We reverse.

### STATEMENT OF THE FACTS

Minnie Sefton (Sefton) allegedly assaulted Kathy Cromer (Cromer) on May 23, 1979 and was subsequently convicted of battery. A liability insurance policy written by Westfield Insurance Company (Westfield) was in force concerning Sefton, but it excluded coverage for intentional torts. Cromer brought her action against Sefton on October 10, 1979, alleging that Sefton "negligently, unlawfully and maliciously struck plaintiff ...", and in that suit, she was represented by Mark McNeeley of the law firm of McNeeley and Sanders. Attorney Dennis Harrold, of the law firm of Soshnick & Bate, entered an appearance for Sefton on December 3, 1979. Later, Karl F. Walker of the law firm of Rolfes, Garvey, Walker & Robbins, representing Westfield and continuing to do so in the summary judgment action, entered his appearance for Sefton on June 23, 1980, and Harrold withdrew. Harrold re-entered his appearance on September 15, 1980, and

Walker subsequently withdrew on September 16, 1980.

Meanwhile Westfield, by Walker, filed a suit for declaratory judgment against Sefton in another cause number to determine coverage, alleging that the tort was intentional and therefore excluded from coverage. This suit was defended by Harrold, who claimed that Westfield must defend even if the suit was groundless or even fraudulent, for the cause of action was proceeding on negligence. The court found for Sefton and ordered Westfield to defend and assume liability for any negligent acts on Sefton's part. The declaratory judgment was not appealed.

On March 3, 1982, Sefton, by Harrold, and Cromer, by McNeeley, filed a stipulation "that Minnie Sefton negligently struck plaintiff", and on the same day Cromer filed a covenant not to execute against Sefton, but reserved therein the right to proceed against Westfield. The next day Harrold withdrew and Walker, for Westfield, again re-entered the case for Sefton.

Thereafter on August 20, 1982, Walker, for Sefton, filed a motion for summary judgment which alleged that there was no genuine issue of any material fact concerning plaintiff's claim and that the defendant, Minnie Sefton, is entitled to judgment as a matter of law. Evidentiary material filed in support of the motion was (1) a request that the court consider its record containing the covenant not to execute and the stipulation of liability; (2) Karl Walker's affidavit which brought the insurance policy into the record, and (3) a certified copy of Sefton's conviction for battery. No counter-affidavits or evidentiary materials were filed. The memorandum attached to the motion advanced the argument that (1) because of the covenant not to execute, Sefton is not "legally obligated to pay sums as damages", as stated in the policy, and therefore, Westfield is not liable; (2) since Sefton was convicted of battery, such conviction was a judicial determination of an intentional act on the part of Sefton, and therefore, without the necessity of further litigation against Westfield as "apparently

contemplated by plaintiff's attorney", there remained no genuine issue of fact as between *plaintiff and the Westfield Companies.*

Cromer also filed her motion for summary judgment unsupported by affidavits or evidentiary material. On September 30, 1982, Harrold again re-entered his appearance for Sefton. Westfield, then by Walker, on October 19, 1982 filed a "Motion for Substitution of Party", stating that pursuant to Ind.Rules of Procedure, Trial Rule 25, it was to be substituted as the real party in interest, to be joined with original defendant, Minnie Sefton. Cromer objected because Westfield was not the real party in interest, and further contended that it is plaintiff's choice as to whom she may legally sue in court. Cromer alleged that Westfield's interest was not ripe at this point prior to judgment and that Minnie Sefton's defense would not be impaired by counsel representing her in her own name. The trial court granted Westfield's Motion for Substitution and "joins them as a defendant".

Thereafter, on December 7, 1982, Westfield filed a motion to resubmit the August 20, 1982 motion for summary judgment which Walker had filed on behalf of Sefton. Cromer objected to the motion. Other than the motion to resubmit the August 20th motion for summary judgment, Westfield filed no pleading, counterclaim or cross-petition of any form, nor did it even file a motion for summary judgment in its name as a party. Cromer for its part, had never filed any amended complaint and had not demanded any relief from Westfield in this suit. In spite of this, on July 18, 1983, the trial court ruled that "plaintiff take nothing by her complaint against the defendant, Westfield Insurance Company".

## ISSUES

The issues framed by Westfield's motion for summary judgment were (1) because of the covenant not to execute, Sefton is not legally obligated to pay sums as damages, as stated in the policy; therefore, Westfield is not liable; (2) since Sefton was convicted

of battery, such conviction was a judicial determination of an intentional act on the part of Sefton and such conduct is an exclusion under the terms of its policy; (3) the stipulation of liability and covenant not to execute violated the cooperation clause in the policy.

The trial court granted the motion for summary judgment without stating its reasons. Additional issues, such as the procedural posture of the case, intervention, res judicata and the denial of Cromer's motion for summary judgment are raised by appellants.

With great difficulty, we have attempted to separate and restate the questions raised in the appeal as follows:

 I. Whether the trial court erred in permitting Westfield to intervene in the personal injury action.

 II. Whether the trial court erred in entering a summary judgment for Westfield, merely upon a motion to renew Sefton's previous motion for summary judgment, when the motion was not based on any pleading, and no claim was made or had matured against Westfield.

 III. In entering summary judgment, whether the trial court erred in determining that the tort was intentional solely on the basis of Sefton's criminal conviction.

 IV. Whether the mere execution of a covenant not to execute and stipulation of liability is a proper basis for summary judgment where the record indicates abandonment.

 V. Whether the declaratory judgment action was res judicata as to the issues raised upon the motion for summary judgment.

 VI. Whether the court erred in failing to grant Cromer's motion for summary judgment on the issue of liability.

## DISCUSSION AND DECISION

Issue I: *Intervention.*

Westfield filed its "motion for substitution of a party" and stated therein that the motion was filed pursuant to T.R. 25, to be substituted as real party in interest. Trial Rule 25 is inapplicable here because it only governs the substitution of parties in the case of death, incompetency, or transfer of interest. Ind.Rules of Procedure, Trial Rule 24 permits intervention of right when the applicant is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund, or transaction. When there is a common issue of law or fact, T.R. 24(B) allows permissive intervention. T.R. 24(C) provides:

"(C) Procedure

 The motion shall state the grounds therefor and set forth or include by reference the claim, defense or matter for which intervention is sought."

Westfield's motion stated no grounds. However, for purpose of discussion, we accept the fact that the motion was for intervention under T.R. 24.

■ Indiana has held that a tort action on a contract theory by an injured third party directly against the liability carrier is inappropriate. *Martin v. Levinson,* (1980) Ind.App., 409 N.E.2d 1239. Nevertheless, a successful personal injury plaintiff can bring an action against the liability carrier if it refuses to honor its contract. *Bennett v. Slater,* (1972) 154 Ind.App. 67, 289 N.E.2d 144. However, a judgment creditor has no standing to bring a suit directly against the liability carrier for an amount in excess of its policy limits based on a negligent handling of a claim, where the insured has not assigned the claim and refuses to bring suit. The reason for this conclusion is that there is no duty or fiduciary relation running from the insurer to the injured plaintiff. The insurer's only duty is to the insured on its contract. *Bennett, supra,* 154 Ind.App. at 74, 289 N.E.2d 144.

*Snodgrass v. Baize,* (1980) Ind.App. 405 N.E.2d 48 is particularly instructive. Baize shot and injured Snodgrass and was convicted of a crime. Snodgrass, in an action

based partly in negligence, recovered judgment against Baize on the negligence count, and in a later proceedings supplemental wherein the insurer was made a party, the insurer was permitted to defend on the ground that the injury was "expected or intended from the standpoint of the insured". Thus, the insurer argued, coverage was excluded under the terms of the policy. *Snodgrass, supra*, at 51.

The Court of Appeals affirmed the trial court's judgment for the insurer. In particular, the court held that the tort trial holding was not res judicata against the insurer as to the issue of coverage under the policy. The court noted that there was a conflict of interest in the defense because the insured would favor finding a negligent tort, and the insurer would favor finding an intentional tort. In such situations, the insurer should not defend. The court also observed that the insurer could not have intervened in the action because of the potential prejudice to Baize. *Id.* at 53.

■ Therefore, returning to the rules governing intervention under T.R. 24, the disposition of the personal injury case is not res judicata and thus as a practical matter does not impair Westfield's ability to protect its interests. According to *Snodgrass*, the insurance company may later defend. Further, there is no common issue of law and fact here. The coverage question is a new matter which at this point is solely between Sefton and Westfield and no business of Cromer. An intervenor should take the case as he finds it and cannot change the issues. *Abeele v. Ruse*, (1942) 112 Ind.App. 596, 44 N.E.2d 235; · *Sexton v. Johnson Suburban Utilities, Inc.*, (1981) Ind.App. 422 N.E.2d 1293. Westfield acknowledges that no Indiana authority exists which permits joinder of the insurer; at the same time, it points out that joinder is not disallowed under Indiana law. Westfield cites the following cases from other jurisdictions which it contends permits joinder, and urges us to follow them:

> *E.g., Johnson v. Jordan*, 22 F.Supp. 286 (E.D.Okla.1938); *American Southern*

*Insurance Co. v. Dime Taxi Service*, 275 Ala. 51, 151 So.2d 783 (1963); *Casualty Reciprocal Exchange of Kansas City, Missouri v. Bounds*, 191 Ark. 934, 88 S.W.2d 836 (1936); *Kephart v. Pickens*, 271 So.2d 163 (Fla. DCA 1972); *Schmidt v. Farmers Elevator Mutual Insurance Co.*, 208 Kan. 308, 491 P.2d 947 (1971); *Robbins v. Short*, 165 So. 512 (La.Ct. App.1936); *Campbell v. Benson*, 97 N.M. 147, 637 P.2d 578 (Ct.App.1981); *Holder v. Haynes*, 193 S.C. 176, 7 S.E.2d 833 (1940); *Crone v. Checker Cab & Baggage Co.*, 134 Tex. 412, 135 S.W.2d 696 (1940); *Cramblitt v. Standard Accident Insurance Co.*, 116 W.Va. 359, 180 S.E. 434 (1935). *See generally* 8 *Appleman, supra*, Sec. 4861.

Examination of these cases reveals that most of the cases are public carrier cases or involve other special statutory provisions created for the benefit of the public, not the insured. One of the above-cited cases deals with a financial responsibility policy required by statute; one involves subrogation rights; one concerned a situation in which execution against the insured was returned unsatisfied. Only one case permitted joinder of the liability insurer in an ordinary tort claim as urged here.

Clearly the policy of the law is to keep the issue of insurance out of personal injury litigation. The usual method, initially pursued by Westfield, is that the insurer filed a separate declaratory judgment suit to determine coverage. Another typical course of action is to defend after judgment, as in *Snodgrass*. To permit intervention by the insurer to litigate coverage in the principal tort case against its insured would distract the trier and literally force the plaintiff to become embroiled in a matter in which she does not yet have an interest. It is significant that there is no judgment entered against Sefton; the parties have "leapfrogged" any proceeding solely against the insured.

Issue II: *Not Based on Pleadings.*

■ Clearly the summary judgment was not based on any pleading, complaint, counterclaim, cross-claim or declaratory judg-

ment proceeding filed by Cromer or Westfield. It is stated in 49 C.J.S. *Judgments*, Sec. 40 (1947):

"While exceptions may occur in respect of judgments by confession or consent, ... as a general rule pleadings are essential to support the judgment of a court of record, and are as necessary a basis for a valid judgment as is evidence. In this connection it has been said that courts have no power to render judgment until their action is called into exercise by pleadings, that the court lacks jurisdiction of the subject matter or controversy in the absence of pleadings and that a judgment rendered without pleadings in support thereof is fundamentally erroneous, a nullity, and void rather than voidable. Where pleadings are lost, judgment should not be rendered until they have been restored."

Indiana has followed the rule set forth above. *See Becovitz v. Saperstein, et al.,* (1910) 46 Ind.App. 339, 99 N.E. 551; *McKenna v. Turpin,* (1958) 128 Ind.App. 636, 151 N.E.2d 303. The latter case stated: "[a] decree in equity, like a judgment in law, cannot stand when it has no pleading to support it." *McKenna, supra,* 128 Ind. App. at 641, 151 N.E.2d 303.

While these cases antedate the 1970 Rules of Trial Procedure, nothing contained therein suggests a contrary result. Ind. Rules of Procedure, Trial Rule 8 provides:

"(A) *Claims for relief.* To state a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, a pleading must contain

(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and

(2) a demand for the relief to which he deems himself entitled.

\* \* \* \* \* \*

(B) *Defenses: Form of denials.* A responsive pleading shall state in short and plain terms the pleader's defenses to each claim asserted ...".

Ind.Rules of Procedure, Trial Rule 12(B) states:

"... Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in a responsive pleading ...."

Ind.Rules of Procedure, Trial Rule 56(B) states:

"A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move ... for a summary judgment."

 As seen above, the rules contemplate issues formed by pleadings upon which to base a judgment. Here, a judgment for Westfield, which neither filed a pleading nor even a motion for summary judgment, was rendered upon Sefton's motion which, in and of itself, was addressed to Westfield's defense, not her's. Further, no claim was asserted against Westfield by Cromer in her complaint as contemplated by T.R. 56(B).

Additionally, Cromer has no cause of action against Westfield until she obtains a judgment against Sefton. As yet, she has made no claim against the insurance company. Therefore, the anticipated defense of a claim not yet made is premature. The defense was filed because such a claim was "apparently contemplated by plaintiff's attorneys".

Issue III: *Intentional Tort.*

One of Westfield's grounds for summary judgment is that Sefton's intentional conduct was established by the battery conviction; therefore, as a matter of law, coverage was excluded by the terms of the policy. The only evidence in support of the summary judgment was a certified copy of the conviction.

 A conviction in a criminal case is not admissible to establish any of the elements of a civil case. *Snodgrass, supra;* 12 I.L.E. *Evidence,* Sec. 132 (1959). Even a guilty plea is not conclusive, but is only evidence as an admission. *Shearer v. Cantrell,* (1969) 145 Ind.App. 693, 252 N.E.2d 514. Evidentiary material supporting a summary judgment must set forth facts as

would be admissible as evidence. T.R. 56(E). Summary judgment based on this specification is in error.

Issue IV: *Covenant Not to Execute.*

■ Westfield argues that because of the covenant not to execute, Sefton is not "legally obligated to pay sums as damages", and therefore Westfield has no coverage under the policy. It likewise argues that the covenant and stipulation of liability breached the cooperation clause included in the policy.

Whether the covenant not to execute and stipulation relieve Westfield from further liability is tempered by other considerations. In *American Family Mutual Insurance Company v. Kivela*, (1980) Ind. App. 408 N.E.2d 805, we held that a consent judgment between the insured of a liability policy and the injured plaintiff and a further "hold harmless" agreement which provided that the judgment would be satisfied only out of the policy, did not, as a matter of law, insulate the insurer. *Kivela, supra*, at 813. Abandonment by the insurer is an essential factor which enters into the determination. We held that the insurer, in a suit by the injured plaintiff, cannot hide behind the "legally obligated to pay" language in its policy after the company abandoned its insured, and the insured settled the case by agreement.

The record herein contains acts on the part of Westfield indicating their unwillingness to defend Sefton. In *Kivela*, we stated the familiar standard of review for summary judgment:

"The standard by which we review the grant of summary judgment is well established. A summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). In determining whether a material issue of fact exists, the facts alleged by the party opposing the motion must be taken as true, and all doubts must be resolved against the proponent of the motion. *Crase v. Highland Village Value Plus Pharmacy*, (1978) [176] Ind.App. [47] 374 N.E.2d 58; *St. Joseph Bank and Trust Company v. Wackenhut Corporation*, (1976) [170] Ind.App. [288] 352 N.E.2d 842; *Mayhew v. Deister*, (1969) 144 Ind.App. 111, 244 N.E.2d 448. Even if the facts are undisputed, all reasonable inferences must be resolved against the moving party. *St. Joseph Bank and Trust Company, supra.* Only if from this viewpoint there is no genuine issue as to any material fact may the summary judgment be sustained. *Kleen Leen, Inc. v. Mylcraine*, (1977) Ind.App. 369 N.E.2d 638; *Mayhew supra*. The burden is upon the proponents of the motion to demonstrate the absence of any material fact and that the law has been properly applied. *Levy Company v. Board of Tax Commissioners*, (1977) [173] Ind.App. [667], 365 N.E.2d 796; *Swanson v. Shroat*, (1976) [169] Ind.App. [80], 345 N.E.2d 872. A fact is material if it tends to facilitate resolution of any of the issues for or against the party having the burden of proof on the issue. The factual issue is genuine if it cannot be completely resolved by reference to the undisputed facts. *Stuteville v. Downing*, (1979) [181] Ind.App. [197], 391 N.E.2d 629."

*Kivela, supra*, at 809.

Westfield has not demonstrated the total absence of material fact.

Issue V: *Res Judicata.*

■ Cromer argues that the declaratory judgment suit is res judicata to the coverage question. We disagree. The issue in the declaratory judgment suit was the claim that because the act was intentional, coverage was excluded. However, the trial judge determined, not that the act was unintentional, but merely that Westfield was obligated to defend Sefton and assume liability for any negligent acts on her part. The issue of coverage was not decided. Further, other issues in the summary judgment were the covenant not to

execute and the admission of liability, both of which were drafted after judgment in the declaratory judgment suit. The issues are not the same and the parties are not the same. *Petersen v. Culver Educational Foundation,* (1980) Ind.App. 402 N.E.2d 448. *See* 17 I.L.E. *Judgment,* Sec. 411 (1959), *Rees v. Heyser,* (1980) Ind.App. 404 N.E.2d 1183.

Issue VI: *Summary Judgment for Cromer.*

██ Cromer argues that since Sefton filed a stipulation admitting she "negligently" struck Cromer, the court erred in not granting her summary judgment on the issue of liability. Westfield answers that it is not a proper party to respond to this argument and does not so respond. Sefton did not respond either. The stipulation is an "admission on file" pursuant to T.R. 56(C), and unrefuted, demonstrates that there is no issue of material fact as to Sefton's liability for negligent conduct. Such admission is binding on her, regardless of the effect on Westfield. The court erred in not granting summary judgment on the issue of liability as to Sefton only.

██ In summary, we first point out that the case was decided on a motion for summary judgment in a proceeding where the parties here attempted to leap over various procedural requirements. The posture of the case is as follows: Westfield, without stating any grounds, defense, or matter for which intervention is sought, as required by T.R. 24(C), erroneously petitioned the court to be "substituted" as a party under T.R. 25 and did not petition to intervene. After intervention was granted, without filing any pleadings, forming any issue, or even filing its own motion for summary judgment, Westfield merely moved to renew the existing motion for summary judgment originally filed on behalf of, and asking relief for, Sefton alone. In its argument, Westfield then proceeded in defense of a claim not yet matured or even asserted in any pleading by Cromer against Sefton. No claim for any relief was asserted against Sefton against whom declaratory relief may be available. Any defense against Sefton on the policy is still open. Such a procedural base is not adequate to support a summary judgment. The issue of coverage should not be tried in the principal case, for that issue is between the insurer and the insured. It could not have any effect except to distract the trier from the merits of the injured plaintiff's case and force Cromer into this separate litigation. Further, summary judgment here does not foreclose the element of intent; that is, whether the ubiquitous Karl Walker, Westfield's attorney, by sometimes appearing and sometimes withdrawing from the representation of Sefton, evidenced an intention that Westfield would not defend Sefton. If Westfield did not intend to defend, the allegation of abandonment as per *Kivela* would arise and Sefton would be forced to negotiate in order to protect her own interests. All the above, we believe, are factual issues inherent in the case and are not foreclosed by the would-be summary judgment proceedings.

Therefore, this cause is reversed and the trial court is directed to (1) vacate the summary judgment, (2) deny Westfield's Petition to Intervene, and (3) grant Cromer's Motion for Summary Judgment against Sefton only as to liability.

Judgment reversed.

ROBERTSON, J., concurs.

RATLIFF, J., concurs in result.