**Joseph R. DELVAL, Appellant–Plaintiff,**

**v.**

**PPG INDUSTRIES, INC.,
Appellee–Defendant.**

**No. 82A01–9105–CV–149.**

Court of Appeals of Indiana,
First District.

April 20, 1992.

Transfer Denied July 8, 1992.

Leslie C. Shively, Evansville, for appellant-plaintiff.

ROBERTSON, Judge.

Joseph R. Delval appeals the adverse summary judgment entered in his defamation suit against PPG Industries [PPG]. We affirm.

## FACTS

The facts in the light most favorable to Delval indicate that in March of 1989 (the time of the alleged defamation), Delval had been an employee of PPG for approximately twenty (20) years. Richard Csukas was Delval's direct supervisor and William Mazick was PPG's plant manager.

On February 16, 1989, three PPG employees directly supervised by Delval, Brenda Minor, Donna Weiss, and Deborah Gentry, signed and caused a letter to be delivered to the PPG plant nurse. This letter referenced Delval's alleged inability to control his temper and occasional irrational behavior. On March 3, 1989, another employee supervised by Delval suggested to Csukas that Delval might be having a nervous breakdown and was experiencing feelings of isolation from everyone else in the plant. On March 15, 1989, Brenda Minor reported to Csukas that she did not feel safe around Delval and made a special effort to avoid him because she perceived Delval as emotionally unpredictable and continuously stressed out or frustrated. On March 15, 1989, Csukas spoke to Delval about some of the reported or perceived problems and noted that Delval appeared depressed. On March 17, 1989, Donna Weiss told Csukas that Delval had been acting irrationally, completely losing control, getting mad and going wild. Weiss expressed concern to Csukas that Delval might hurt her.

Finally, on March 17, 1989, Gentry told PPG plant manager William Mazick and Csukas that Delval had expressed suicidal and homicidal thoughts to Gentry. Gentry told them that Delval stated that he was thinking about killing Csukas and then killing himself. Mazick and Csukas met with Larry Crosbie, the head of personnel for PPG. Mazick, Csukas, and Crosbie discussed Gentry's report of Delval's suicidal and homicidal threats. They also reviewed the background of information available concerning Delval's relationship with his subordinates. Crosbie concluded that the situation was sufficiently serious to warrant referral to the company's Employee Assistance Program [EAP].

Crosbie contacted a social worker at the Deaconess Hospital Concern Center, PPG's EAP carrier. The Concern Center, as PPG's EAP carrier, assists PPG's employees with employment-related issues including job stress and family problems. All communications regarding employees are absolutely confidential. Crosbie communicated to the social worker Gentry's report that Delval had expressed suicidal and homicidal thoughts. The social worker scheduled an appointment for Delval for 2:00 p.m. that afternoon. Crosbie and Csukas asked Delval to visit the Concern Center and told him that an appointment had been made for him that afternoon.

Delval kept the appointment at the Concern Center. A Concern Center physician determined that Delval should be admitted as an inpatient at the Deaconess Hospital and so advised Delval. On March 27, 1989, Delval was voluntarily admitted as an inpa-

tient at the hospital. He was released one week later.

While Delval was in the hospital, PPG determined that Delval should not remain in a supervisory position with PPG, an opinion also expressed by Delval's psychiatrist. PPG offered Delval a non-supervisory assignment in a plant in Ohio. Delval declined this temporary assignment and resigned from PPG. Delval was ultimately found to have been constructively discharged by PPG by the Indiana Department of Employment and Training Services.

Additional facts are supplied as necessary.

## DECISION

■■■ We note at the outset that PPG has failed to file an appellee brief. When the appellee fails to file a brief, we may reverse the trial court if the appellant makes a prima facie showing of reversible error. *Champion Home Builders Co. v. Potts* (1989), Ind.App., 538 N.E.2d 280. However, although we may reverse upon a showing of prima facie error when the appellee fails to file an appellee's brief, we are not compelled to do so and may, in our discretion, decide the case on the merits. *S.M.V. v. Littlepage* (1982), Ind.App., 443 N.E.2d 103, *trans. denied.* In the exercise of our discretion, we decline to invoke the prima facie error rule and choose to address this appeal on the merits.

Also, as a preliminary matter, we must set out the well-settled standard for summary judgment. The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. When we review a motion for summary judgment, we apply the same standard as that employed by the trial court. *King v. Bartholomew County Hosp.* (1985), Ind.App., 476 N.E.2d 877, *trans. denied.* Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions, affidavits, and testimony, if any, show that there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law. *Id.* Any doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. For purposes of determining if summary judgment is appropriate, a fact is said to be material if its existence facilitates the resolution of any of the issues involved. *Anderson v. State Farm Mut. Auto Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170. Summary judgment is appropriate when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of overkill in its use. *Mayhew v. Deister* (1969), 144 Ind.App. 111, 244 N.E.2d 448, *trans. denied.*

■■ Delval bases his claim of defamation on Gentry's report to PPG managers, Mazick and Csukas, that Delval had made statements indicating suicidal and homicidal tendencies which were ultimately reported to the mental health professionals at the Deaconess Hospital Concern Center. Delval denies having made these statements to Gentry. Delval asserts that Gentry was ambitious and was motivated to make these false statements in the hope of obtaining a supervisory position at PPG. Delval notes that Gentry had, on numerous occasions, gone over Delval's head and communicated with Delval's superiors regarding her complaints about Delval's behavior. Delval asserts that PPG acted recklessly by communicating Gentry's defamation to the Concern Center without conducting a more thorough investigation of the alleged homicidal/suicidal threats.

■■ Defamation is not actionable unless there is a "publication." *Brockman v. Detroit Diesel Allison Div. Etc.* (1977), 174 Ind.App. 240, 366 N.E.2d 1201. Without communication of defamatory matter to a third party, it is of no consequence whether the communication is actionable per se, privileged, or uttered with malice. *Id.* No

publication results (and therefore, no defamation action will lie) from intracorporate transfers of information communicated to personnel with an interest in that information. *Rambo v. Cohen* (1992), Ind.App., 587 N.E.2d 140; *Bals v. Verduzco* (1990), Ind.App., 564 N.E.2d 307.

 Publication to an agent of the plaintiff who is acting at plaintiff's behest and on his behalf is tantamount to a publication to the plaintiff himself, and as such does not fulfill the publication requirement. *Brockman,* 366 N.E.2d 1201. In *Brockman,* the claim of defamation was based on statements made by company management to the plaintiff's union representative at a meeting held regarding the plaintiff's grievance with the company. We held that such a communication failed to satisfy the publication element necessary to the plaintiff's claim of defamation. *Id.* at 1203. Therefore, we affirmed the trial court's entry of judgment on the evidence in favor of the corporation.

We believe the present circumstances are sufficiently similar to those in *Brockman* to reach a result similar to the one reached in *Brockman.* In the present case, the only communication of the alleged defamatory matter outside the corporation was to the mental health professionals at the Deaconess Hospital Concern Center, PPG's EAP carrier. We believe these mental health professionals were primarily responsible to Delval and are appropriately considered as acting on Deval's behalf. Moreover, the communications in question were absolutely confidential.

We believe our interpretation of the law is supported by important public policy considerations. The effectiveness of Employee Assistance Programs would be severely diminished if a supervisor's referral of an employee to the company's EAP could be considered an intercorporate publication sufficient to sustain a defamation claim. Such a result would have a chilling effect upon employer referrals to EAPs which we recognize as an important benefit for both employers and employees.

For the above reasons, we conclude that Delval has failed to allege or demonstrate a publication sufficient to sustain his claim of defamation. Therefore, we must conclude the trial court's entry of summary judgment on PPG's behalf was appropriate.

Judgment affirmed.

RATLIFF, C.J., and CHEZEM, J., concur.