**Kathy COLLINS, Appellant/Cross–Appellee–Defendant,**

**v.**

**COVENANT MUTUAL INSURANCE CO., Appellee/Cross–Appellant–Plaintiff.**

**No. 48A02–9109–CV–390.**

Court of Appeals of Indiana, Second District.

Nov. 30, 1992.

Arthur R. Baxter, Jr., Robert W. York, York, Schrager & Baxter, Indianapolis, for appellant.

Irwin B. Levin, David J. Cutshaw, Cohen & Malad, P.C., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant/cross-appellee Kathy Collins (Collins) appeals from the entry of summary judgment for plaintiff-appellee/cross-appellant Covenant Mutual Insurance Company (Covenant), claiming that she was not a proper party to Covenant's declaratory judgment action and that the trial court erred when it entered summary judgment. Covenant cross-appeals, claiming that the trial court erred when it granted Collins' motion for relief from judgment and reentered summary judgment at a later date.

We reverse.

## FACTS

The facts most favorable to the nonmoving party (Collins) reveal that Collins became a patient of Dr. Pravin Thakkar (Thakkar) in March, 1984. Collins became involved in a sexual relationship with Thakkar and in January, 1988, was concerned that she might be pregnant by him. On January 9, 1988, after office hours, Thakkar examined Collins to determine whether she was pregnant. Thakkar told Collins that she was not pregnant and then performed some act with a medical instrument during a vaginal examination that caused Collins excruciating pain. She was then left unattended in the examination room for over an hour and she eventually sought medical attention elsewhere. She was told that she was pregnant and that she was having a miscarriage. She was eventually hospitalized for a dilatation and curettage (D & C). Thakkar was subsequently convicted of certain crimes for his acts relating to Collins and several other women.

Collins filed suit against Thakkar in the Hancock Superior Court for the wrongful abortion of their fetus, assault and battery and intentional infliction of emotional distress. The trial court in that action granted Thakkar's motion to dismiss Collins' complaint because she had not complied with the provisions of Indiana's Medical Malpractice Act (Ind.Code 16–9.5–1) by submitting her claim to a medical review panel before filing suit.

That decision was reversed on appeal by this court in *Collins v. Thakkar* (1990), Ind.App., 552 N.E.2d 507 (Judge Sullivan dissenting), *trans. denied.* We concluded that Collins' claims based on theories of intentional tort, on the facts alleged in her complaint, were not torts based on health care or professional services rendered by a health care provider and therefore Collins was not required to submit those claims to a medical review panel before bringing her action against Thakkar. In our opinion, we observed that Collins had filed a medical malpractice complaint with the Indiana Insurance Commission based upon the same fact allegations supporting her intentional tort claims. *Id.* at 509.

Collins filed a second suit against Thakkar alleging that Thakkar's acts constituted medical malpractice. Her second action was consolidated with her first suit alleging intentional torts, and the entire case was venued to the Shelby Circuit Court, where it is currently pending.

Covenant, Thakkar's insurer, brought the present action, seeking a declaratory judgment of its obligations for Thakkar's acts under its insurance contract. Covenant's declaratory judgment action included Thakkar, Collins and several other of Thakkar's victims as defendants. Collins unsuccessfully moved to dismiss the action

against her. A default judgment was entered against Thakkar, and Covenant settled its claim with several of Thakkar's other victims and they were voluntarily dismissed from the action. Covenant also moved for summary judgment against Collins. On January 31, 1991, the trial court entered summary judgment in favor of Covenant, concluding:

> "Plaintiff's Motion for Summary Judgment is hereby GRANTED, as there are no genuine issues of material fact. Plaintiff CMIC is entitled to judgment as to Count I of its declaratory judgment complaint, as a matter of law. A review of the uncontested factual basis of Defendant Collins' claims against defendant Thakkar, a review of the terms of the subject insurance policy issued to defendant Thakkar by CMIC and its predecessor, and a review of *Collins v. Thakkar,* 552 N.E.2d 507 (Ind.App.1990), *transfer denied,* —— N.E.2d —— (Ind.1990), decided on identical facts as presented by this record, compel the conclusion that there is no coverage under the subject insurance policy for the claims of defendant Collins against defendant Thakkar. Therefore, defendant Collins has no right to or interest in any proceeds of the subject insurance policy."

*Record* at 186–87.

Although the trial court's judgment was issued on January 31, 1991, a computer error prevented Collins' counsel from receiving notice of the ruling. While counsel made several calls to the court to check the case docket, he was misinformed each time that no ruling had been made on the summary judgment motion. On March 13, 1991, counsel for Covenant sent Collins' counsel a letter discussing the entry of summary judgment, but because the body of the letter referred to another of Thakkar's victims and not to Collins, the letter was routed to another attorney in the firm. Collins' counsel first learned of the entry of summary judgment on May 31, 1991.

On June 5, 1991, Collins' counsel filed a motion for relief from judgment pursuant to Ind.Rules of Procedure, Trial Rule 60(B), claiming that he had not received notice of the January 31, 1991 judgment. A special judge appeared and was qualified. The special judge granted the motion for relief from judgment and changed the date of the summary judgment entry from January 31, 1991 to May 31, 1991, which gave Collins the opportunity to seek appellate review of the entry of summary judgment.

## ISSUES

1. Whether the special judge erred when it granted Collins' motion for relief from judgment?

2. Whether Collins was a proper party to Covenant's declaratory judgment action?

3. Whether the trial court properly entered summary judgment?

## DECISION

*ISSUE ONE*—Did the special judge err by changing the date of the summary judgment entry?

*PARTIES' CONTENTIONS*—Covenant argues that the special judge abused his discretion when he granted Collins' motion for relief from judgment because the special judge should have concluded that the March 13, 1991, letter constituted actual notice of the entry of summary judgment. Collins replies that the evidence supports the special judge's decision.

*CONCLUSION*—The special judge properly granted Collins' motion.

██ The decision of whether to grant relief under T.R. 60(B) is left to the equitable discretion of the trial judge and we will not reweigh the evidence. We will reverse the trial court's decision only for an abuse of discretion. *Shotwell v. Cliff Hagan Ribeye Franchise, Inc.* (1991), Ind., 572 N.E.2d 487.

Covenant's arguments that the special judge should have considered the receipt of the March 13, 1991 letter as constituting

"actual knowledge" of the trial court's entry of summary judgment and that it might be prejudiced by the granting of the motion are simply requests for us to reweigh the evidence and substitute our judgment for that of the special judge. The evidence before the special judge demonstrated that Collins' counsel did not actually know about the entry of judgment until May 31, 1991 and Covenant has not demonstrated any prejudice resulting from the special judge's decision.

In light of the computer malfunction which prevented the initial notice from being sent, the misinformation repeatedly given to Collins' counsel by the court's clerk, and the fact that Collins' counsel did not actually know of the ruling until May 31, the granting of Collins' T.R. 60(B) motion was not an abuse of discretion. *See Soft Water Utils., Inc. v. Le Fevre* (1973), 261 Ind. 260, 301 N.E.2d 745.

*ISSUE TWO*—Is Collins a proper party to Covenant's declaratory judgment action?

*PARTIES' CONTENTIONS*—Collins claims that because she has no interest in Covenant's insurance contract with Thakkar, she should not be included in Covenant's action. Covenant responds that it has the right to maintain a declaratory judgment action to find out to whom its insured may be liable within the coverage of its policy.

*CONCLUSION*—Collins was properly included in Covenant's action.

■ In *Cromer v. Sefton* (1984), Ind. App., 471 N.E.2d 700, this court took judicial notice of the general practice of insurance companies of filing separate declaratory judgment actions to determine their liability for their insured's torts. "Clearly the policy of the law is to keep the issue of insurance out of personal injury litigation. The usual method, initially pursued by Westfield, is that the insurer filed a separate declaratory judgment suit to determine coverage." *Id.* at 704. Thus it seems settled that Covenant has a right to bring suit against Collins, Thakkar and his other victims to determine the coverage of its policy with Thakkar and the extent to which it is liable for his torts. *Id. see also Hawkins v. Auto–Owners (Mut.) Ins. Co.* (1991), Ind.App., 579 N.E.2d 118; *Fowler v. Farm Bureau Mut. Ins. Co.* (1965), 137 Ind.App. 375, 209 N.E.2d 262. We can find no merit to Collins' objections.

*ISSUE THREE*—Did the trial court properly enter summary judgment in Covenant's favor?

*PARTIES' CONTENTIONS*—Collins maintains that because her claims against Thakkar encompassed more than the intentional torts considered in *Collins, supra,* the trial court should not have relied on the analysis in *Collins* to conclude that Thakkar's actions were not covered by Covenant's policy. Covenant responds that Thakkar's actions were not covered by the policy and that the trial court properly granted its motion for summary judgment.

*CONCLUSION*—The trial court erred when it entered summary judgment against Collins.

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. The moving party bears the burden of proving that there is no genuine issue of material fact and is entitled to judgment as a matter of law. We will not weigh the evidence and will consider the facts in the light most favorable to the nonmoving party. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369; *Delval v. PPG Industries, Inc.* (1992), Ind.App., 590 N.E.2d 1078, *trans. denied.*

Covenant's insurance policy provided, in pertinent part, that Covenant would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages arising out of individual professional liability; personal injury caused by error, omission, or negligence in *providing health care services,* rendered or which should have been rendered by the insured...." *Record* at 23 (emphasis supplied).

Covenant moved for summary judgment claiming that this court's decision in *Col-*

*lins, supra,* determined that Thakkar's actions (intentional torts) did not constitute the rendition of health care or professional services and that therefore his conduct could not be covered by the policy. Collins asserts that she made several claims that Thakkar was negligent in providing health care services and that her claims against Thakkar are therefore within the scope of Covenant's coverage.

In granting summary judgment, the trial court focused on our decision in *Collins* and concluded that Thakkar's acts were not covered by Covenant's policy. Covenant's, and the trial court's, reliance on our opinion in *Collins* is misplaced. In *Collins,* we emphasized:

> "The *narrow* issue we address in this interlocutory appeal is whether appellant Collin's [sic] three count complaint *based upon theories* of wrongful abortion, assault and battery, and intentional infliction of emotional distress alleges 'torts' 'based on health care or professional services rendered ... by a health care provider, to a patient.' "

*Collins, supra* at 508 (emphasis supplied).

 Our conclusion that Collins was not required to submit to a medical review panel her intentional tort claims under the specific facts alleged in no way prevented her from pursuing a malpractice action against Thakkar. As a general rule, a complainant is not limited to a single theory of recovery, but may recover under any theory that is sufficiently supported by the facts. *Finley v. Chain* (1978), 176 Ind. App. 66, 374 N.E.2d 67, *overruled on other grounds. See also Ayr–Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335; *Eby v. York–Division, Borg–Warner* (1983), Ind.App., 455 N.E.2d 623; Ind.Rules of Procedure, Trial Rule 8(E).

Our decision in *Collins* was that her *particular claims* in that case were not required to be submitted to a medical re-

view panel. We did not conclude that the *facts* on which those claims were based could not also support malpractice allegations or that they could not be characterized as the rendition of health care services.

Collins maintains that her complaint against Thakkar for medical malpractice contained four separate allegations of *negligence* in the rendering of medical services: (1) that Thakkar entered into a sexual relationship with her while she was his patient; (2) that Thakkar impregnated her while she was his patient; (3) that Thakkar told her she was not pregnant when she was; and (4) that Thakkar mistreated her after the exam and failed to properly treat the wound he inflicted.[1] Therefore, she asserts, Thakkar's acts were covered by Covenant's policy.

With respect to Collins' first two claims of malpractice, we cannot agree that she has stated a claim within the scope of Covenant's insurance policy. Although no Indiana court has decided whether a physician's sexual conduct with a patient is actionable as medical malpractice, several other jurisdictions have considered the subject.

Collins seeks succor from a number of cases which conclude that a psychiatrist's sexual relationship with a patient is conduct covered by professional liability insurance policies and can constitute malpractice. *See Anclote Manor Found. v. Wilkinson* (1972), Fla.Dist.Ct.App., 263 So.2d 256; *St. Paul Fire & Marine Ins. Co. v. Mitchell* (1982), 164 Ga.App. 215, 296 S.E.2d 126; *Cotton v. Kambly* (1980), 101 Mich.App. 537, 300 N.W.2d 627; *L.L. v. Medical Protective Co.* (Ct.App.1984) 122 Wis.2d 455, 362 N.W.2d 174.

However, each of those cases related to a *psychiatrist's* sexual activity. With respect to a typical physician's sexual conduct, different reasoning has been adopted.

---

1. The trial court had before it Collins' affidavit and her complaint for medical negligence. *Rec-* *ord* at 119–21, 140–42.

The general rule is that a physician's sexual relationship with a patient does not constitute rendition of health care services, and is not actionable as medical malpractice. *See Standlee v. St. Paul Fire & Marine Ins. Co.* (Ct.App.1984), 107 Idaho 899, 693 P.2d 1101; *Hirst v. St. Paul Fire & Marine Ins. Co.* (Ct.App.1984), 106 Idaho 792, 683 P.2d 440; *St. Paul Fire & Marine Ins. Co. v. Quintana* (1988), 165 Mich.App. 719, 419 N.W.2d 60; *Smith v. St. Paul Fire & Marine Ins. Co.* (1984), Minn., 353 N.W.2d 130; *South Carolina Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry* (1987), 291 S.C. 460, 354 S.E.2d 378; *Washington Ins. Guar. Ass'n v. Hicks* (1987), 49 Wash.App. 623, 744 P.2d 625.

The court in *Simmons v. United States* (9th Cir.1986), 805 F.2d 1363 put it this way:

> "The crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon."

*Id.* at 1366.

The Minnesota Supreme Court, in *St. Paul Fire & Marine Ins. Co. v. Love* (1990), Minn., 459 N.W.2d 698, also focused on the role of the "transference phenomenon" in psychiatric therapy to conclude that a therapist's [2] sexual conduct with a patient gave rise to a claim covered by the therapist's professional liability insurer, explaining:

> "To better understand this case, we need to describe transference. This phenomenon is '[t]he process whereby the patient displaces on to the therapist feelings, attitudes and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly.' S. Waldron–Skinner, *A Dictionary of Psychotherapy* 364 (1986). Transference is common in psychotherapy. The patient, required to reveal her innermost feelings and thoughts to the therapist, develops an intense, intimate relationship with her therapist and often 'falls in love' with him. The therapist must reject the patient's erotic overtures and explain to the patient the true origin of her feelings. A further phenomenon that may occur is countertransference, when the therapist transfers his own problems to the patient. When a therapist finds that he is becoming personally involved with the patient, he must discontinue treatment and refer the patient to another therapist."

*Love, supra* at 700.

The court went on:

> "Transference, of course, occurs at times in other relationships including that of medical doctor and patient, but the therapist alone elicits transference as a regular, accepted part of his practice in treating marital and sexual disorders. [Citation omitted]. The therapist must encourage the patient to express her transferred feelings, while rejecting her erotic advances.... In short, the therapist must both encourage transference and discourage certain aspects of it. This may be difficult to do and presents an occupational risk. The therapeutic alliance in this situation gives rise to a duty, imposed by professional standards of care as well as by ethical standards of behavior, to refrain from a personal relationship with the patient, whether during or outside therapy sessions."

*Id.* at 701.

■ So absent a patient/therapist relationship, in which the risk of mishandling

---

**2.** The court in *Love* used the term "therapist" to refer to psychiatrists, psychologists and other professionals who engage in psychotherapy or counseling therapy for marital, family and sexual problems. Generally, courts distinguish therapists from other health care professionals, such as chiropractors, dentists and electroencephalograph technicians, when deciding whether sexual activity is covered by professional liability insurance policies. *See Quintana, supra; Ferry, supra; Hicks, supra.*

the transference phenomenon is an occupational hazard generally within the scope of professional liability insurance coverage, a physician's sexual activity with a patient does not give rise to an actionable claim of medical malpractice and does not constitute the provision of health care services. *See Standlee, supra; Hirst, supra; Quintana, supra; Smith, supra; Ferry, supra; Hicks, supra.*

■ Thakkar was not Collins' therapist, so his sexual relationship with her cannot be characterized as the provision of health care services and is therefore not within the scope of the coverage of his insurance policy with Covenant. We reach a different conclusion with respect to Collins' other claims against Thakkar.

Collins' claims that Thakkar misinformed her of the results of a medical procedure and that he negligently performed that medical procedure can arguably be construed as claims for "personal injury caused by error, omission, or negligence in providing health care services" as covered by Covenant's insurance policy. *Record* at 23.

■ Covenant asserts that coverage for Thakkar's misrepresentation of Collins' pregnancy should be excluded on the basis of the public policy against insuring for intentional acts. It is true that, when construing intentional act exclusions in insurance policies, it has been observed that a factor favoring such an exclusion is the general public policy against permitting individuals from insuring against intentional harms and thereby acquiring a license to engage in such activities. *See City of Muncie v. United Nat. Ins. Co.* (1991), Ind.App., 564 N.E.2d 979; *Home Ins. Co. v. Neilsen* (1975), 165 Ind.App. 445, 332 N.E.2d 240.

However, Covenant's policy with Thakkar does not contain an intentional act exclusion. Further, there is no evidence that Thakkar's conduct was motivated by the possibility that his acts would be indemnified by his insurer. So the possible cover-

age of his acts for the benefit of his innocent victim would not violate the reasoning underlying the public policy. *See Vigilant Ins. Co. v. Kambly* (1982), 114 Mich.App. 683, 319 N.W.2d 382:

"Moreover, the public policy considerations raised by plaintiff which prohibit the insurability of criminal or intentionally tortious acts are not present here. Initially, it is unlikely that the insured was induced to engage in the unlawful conduct by reliance upon the insurability of any claim arising therefrom or that allowing insurance coverage here would induce future similar unlawful conduct by practitioners. Nor does it appear that the policy was obtained in contemplation of a violation of the law. [Citation omitted]. Furthermore, coverage does not allow the wrongdoer unjustly to benefit from his wrong. It is not the insured who will benefit, but the innocent victim who will be provided compensation for her injuries. [Citation omitted]. In this instance, there is great public interest in protecting the interests of the injured party."

*Id.* at 687–88, 319 N.W.2d at 385.

■ Covenant also points to Collins' claims that Thakkar mistreated her after he gouged her as not being supported by the record. A review of Collins' affidavit and complaint for medical negligence, however, establishes that Collins alleged she was left unattended in the examination room for over one and a half hours and that Thakkar negligently performed the vaginal examination causing her to develop a vaginal infection. *Record* at 141. She also alleged that he gave her medication for her pain. *Record* at 120. These are allegations based on Thakkar's provision of health care services and clearly fall within the scope of coverage of Covenant's insurance policy.

It was Covenant's burden to demonstrate that Collins' claims were not covered by its insurance policy. *Stephenson, supra.* As the evidence submitted by Covenant demonstrates that Collins alleged that Thakkar

negligently provided health care services to her, causing her personal injury, Covenant has failed to establish that it is entitled to judgment as a matter of law. Under these circumstances the trial court erred when it relied on our decision in *Collins* to enter summary judgment against Collins on her negligence claims.

Judgment reversed and remanded for further proceedings consistent herewith.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs in part and concurs in result in part with opinion.

SULLIVAN, Judge, concurring in part and concurring in result in part.

I concur in the majority's opinion with respect to Issue One.

I concur in result with respect to Issue Two. It is clear under controlling case law that in a claim of negligence against a defendant, an injured party may not join as a named party the insurer of the defendant. This proposition, however, does not mean that in an appropriate circumstance an insurer is precluded from joining the injured party as a named party in a declaratory judgment action against the insured. Such joinder, however, should not ordinarily take place in advance of a claim by the injured party against the allegedly negligent defendant. *Cromer v. Sefton* (1984) 1st Dist.Ind.App., 471 N.E.2d 700, cited by the majority, supports the latter proposition. *Cromer* does not provide authority for the blanket statement that: "Thus it seems settled that Covenant has a right to bring suit against *Collins*, Thakkar, *and his other victims.*..." At 1194. (Emphasis supplied.) To the contrary, the *Cromer* court noted that the coverage question was solely between the insurance company and the insured and is "no business of Cromer (the allegedly injured party)". 471 N.E.2d at 704. If we were to permit joinder of any and all possible claimants in every declaratory judgment suit brought by the insurer against the insured, such would violate the

proscription in *Cromer* against "literally forc[ing] the plaintiff to become embroiled in a matter in which she does not yet have an interest." 471 N.E.2d at 704. In *Hawkins v. Auto–Owners (Mutual) Insurance Company* (1991) 2d Dist.Ind.App., 579 N.E.2d 118, the insurance carrier sought declaratory judgment against *both* the insured and the personal injury plaintiff. However in *Hawkins*, the personal injury plaintiff had already filed her negligence suit against the insured. We held that the trial court was within its discretion to permit the insurer to maintain the declaratory judgment suit but indicated, because of a seeming conflict of interest by counsel, that the determination of a lack of coverage could not stand as against Hawkins, the plaintiff in the negligence suit. We did not decide that joinder of Hawkins in the declaratory judgment action would have been proper absent Hawkins's then pending litigation against the tortfeasor.

*Fowler v. Farm Bureau Mutual Insurance Co. of Indiana* (1965) 137 Ind.App. 375, 209 N.E.2d 262, does lend factual support to the majority's view because in *Fowler* the insurance carrier did obtain a declaratory judgment that there was no coverage, as against not only the insured, but as against several injured persons as well. But again, it appears that the injured persons had already made claim against the insured. In any event, the matter of joinder of personal injury plaintiffs or prospective plaintiffs was not discussed in *Fowler*.

Subject to the above caveat, I agree that it was within the discretion of the trial court to permit the joinder of Collins in this procedural setting.

As to Issue Three, the majority retreats from the position taken by the *Collins* majority in the prior case. It seems that the majority here holds that although the earlier claims of intentional tort forced those claims outside the purview of the Medical Malpractice Act, those same claims are now within the coverage of the Act because of the facts upon which those claims are

based. The logic of the distinction escapes me.

In this regard, I note that the majority does not bifurcate the two consolidated complaints. The majority does not, as I would have anticipated, hold that the intentional tort claims remain outside the coverage for medical malpractice, while at least one or more of the new claims fall within that coverage. Accordingly, the new majority position places me in a dilemma with respect to voting for reversal or affirmance. Nevertheless, I proceed to a consideration of the result obtained in this appeal.

I do not in any manner agree that, as held by the majority here, "mishandling [of] the transference phenomenon" is the *only* basis for a professional malpractice claim involving sexual contact. *See St. Paul Fire & Marine Insurance Co. v. Shernow* (1992) 222 Conn. 823, 610 A.2d 1281 (professional liability insurance covered sexual aggression by dentist against patient after negligent application and overdose of anesthesia which contributed to the patient's injury).

However, I do agree that the first two allegations of the new complaint are solely related to the sexual relationship and are unrelated to the physician-patient relationship. Accordingly, I agree that those counts of the new complaint are outside the coverage of the professional liability policy and that as to those two counts summary judgment in favor of Covenant was proper. In addition I fully concur in the concluding portion of the majority opinion which holds that the third and fourth allegations of the new opinion (*see* opinion at ——) are within the coverage of the policy.

By way of summation, I concur in the reversal of the summary judgment in favor of Covenant with respect to all counts of the original complaint because I remain of the view that the claim originally lodged was within the purview of the Medical Malpractice Act and therefore within the coverage of *this* professional liability policy. I

also agree that the third and forth allegations of the new complaint are subject to a determination upon the merits. Further, I agree that Covenant need not respond as an insurer by reason of any recovery obtained by Collins as a result of the first two allegations of her most recent complaint.