**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JAMES E. STOLTZ**
Stoltz Law Office
Evansville, Indiana

ATTORNEYS FOR APPELLEES:

**KRYSTAL M. LECHNER**
Evansville, Indiana

**CRYSTAL G. ROWE**
KIGHTLINGER & GRAY, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CROWN CAPITAL SOLUTIONS, | ) | |
| | ) | |
| Appellant/Respondent, | ) | |
| | ) | |
| vs. | ) | No. 82A04-1403-SC-101 |
| | ) | |
| MILLER PIPELINE CORP. and | ) | |
| LIBERTY MUTUAL, | ) | |
| | ) | |
| Appellees/Petitioners. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Sheila M. Corcoran, Judge
Cause No. 82D06-1309-SC-10031

October 16, 2014

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Crown Capital Solutions filed a small-claims action against Miller Pipeline Corporation and its insurer, Liberty Mutual. Crown sought $6000 in damages to a 2008 Chevrolet Corvette owned by Blair and Tyler Mielke and alleged that it was entitled to bring the action as Blair's assignee. Miller Pipeline and Liberty Mutual filed a motion to dismiss, arguing that Blair had not assigned any valid cause of action to Crown Capital. The small-claims court granted the motion, and Crown Capital now appeals. Because we conclude that Blair failed to assign any valid cause of action to Crown Capital, we affirm.

## Facts and Procedural History

On November 2, 2011, Blair and Tyler Mielke's 2008 Chevrolet Corvette was damaged by roadwork being performed by Miller Pipeline.[1] The Mielkes filed a property-damage claim against Miller Pipeline. Liberty Mutual, Miller Pipeline's insurer, settled the claim for $8692.67, and Tyler signed a release waiving all claims relating to the November 2, 2011 incident. Appellant's App. p. 30-31. The Mielkes sold the 2008 Chevrolet Corvette in September 2012.

After selling the Corvette, Tyler contacted Liberty Mutual to inquire about pursuing a diminished-value claim. Liberty Mutual informed Tyler that Blair could pursue such a claim because he was a partial owner when the Corvette was damaged.

---

[1] Blair is Tyler's father. Blair and Tyler were both listed as owners on the 2008 Chevrolet Corvette's title when it was damaged. *See* Appellant's App. p. 26.

2

Six months later, Blair executed an assignment ("the Assignment") transferring his claim for diminished-value damages to Crown Capital. It provided:

## ASSIGNMENT OF CLAIM FOR DIMINISHED VALUE DAMAGES

This Assignment of Claim for Diminished Value Damages (the "Assignment") is made and effective 5-4-13

BETWEEN: BLAIR MIELKE (the "Assignor"), an individual or entity residing under and held to the laws of the state of IN (state of residence), with primary residence or business located at:

(Address)

AND: Crown Capital Solutions (the "Assignee"), a corporation organized and existing under the laws of the state of IN.

FOR VALUE RECEIVED per Schedule A, the Assignor hereby sells and transfers to the Assignee and its successors, assigns and personal representatives, any and all claims, demands, and cause or causes of action of any kind whatsoever which the undersigned Assignor has or may have against _____ (at fault party) and/or LIBERTY MUTUAL (at fault insurance carrier), arising from Claim # P413155493 for the following type claim:

Diminished Value from property damage to Assignor's '11 CHEVROLET Cavalic (Vehicle Year, Make and Model) arising from the accident on or about 11-2-11 (Date of Loss).

And the undersigned Assignee may in its own name and for its own benefit prosecute, collect, settle, compromise and grant releases on said claim as it in its sole discretion deems advisable.

IN WITNESS WHEREOF, the parties have executed this Assignment on the date first above written.

Signed, sealed and delivered in the presence of:

ASSIGNOR
_____
Authorized Signature

Blair C. Mielke
Print Name (and Title, if applicable)

ASSIGNEE
_____
Authorized Signature

Roy Loiz  President
Print Name and Title

*Id.* at 12.

Shortly after the Assignment was executed, Crown Capital filed suit against Miller Pipeline and Liberty Mutual. It sought to recover $6000 in damages and attached the Assignment to its complaint. *Id.* at 6. Crown Capital also attached a letter from one of

3

its employees—dated September 9, 2013—to Liberty Mutual requesting payment of $6663.74 for damage to a 2008 Chevrolet Corvette that occurred on November 2, 2011. *Id.* at 10-11.

Miller Pipeline and Liberty Mutual filed a motion to dismiss arguing that: (1) Blair assigned a claim for damage to a 2011 Chevrolet Camaro, not a 2008 Chevrolet Corvette, which meant that Crown Capital had no standing to bring a claim for damage to a 2008 Chevrolet Corvette; and (2) Blair did not assign any claim against the at-fault party, Miller Pipeline, and Blair had no direct claim against Liberty Mutual, Miller Pipeline's insurer. *Id.* at 21-22. In its response to the motion to dismiss, Crown Capital argued that the Assignment contained a scrivener's error but was intended to "assign [Blair's] right to recover from Miller Pipeline for the damage to the 2008 Chevrolet Corvette." *Id.* at 35. Crown Capital asked the court to reform the instrument to reflect the parties' actual intent. *Id.*

Miller Pipeline and Liberty Mutual brought new facts to light in their response to Crown Capital's filing. *Id.* at 42-46. Citing text from Crown Capital's website, they argued that:

- "According to Crown Capital Solution's website, the company is in the business of transferring ownership of claims to provide 'all the legal and civil rights to the DV [diminished value] claim so that the insurance company is required to work with us, removing the time and headaches associated with an equitable recovery.'"
- "The [Crown Capital] website goes on to claim, 'in many cases Crown Capital educates the insurance companies on the case law and understanding DV settlements. However, some claims still require litigation for a fair resolution. Once the final settlement or judgment has been made, we will then provide payment for your claim.'"

4

*Id.* at 43. Based on these representations, Miller Pipeline and Liberty Mutual argued that Crown Capital's "explanation that [the drafter of the Assignment] 'made a mistake' is not sufficient to reform the assignment to the prejudice of the entities who were not present to [it]." *Id.* at 44.

The small-claims court held a hearing on the parties' motions.[2] After taking the matter under advisement, the court granted Miller Pipeline and Liberty Mutual's motion and dismissed the matter with prejudice. Crown Capital now appeals.

## Discussion and Decision

Crown Capital argues that the trial court erred in granting Miller Pipeline and Liberty Mutual's motion to dismiss. Because it appears that the trial court considered matters outside the pleadings—specifically, text excerpted from Crown Capital's website—we think the issue is properly phrased as whether the trial court erred in granting their motion for summary judgment.

Indiana Trial Rule 12(B) provides that a motion to dismiss for failure to state a claim shall be treated as a motion for summary judgment when "matters outside the pleading are presented to and not excluded by the trial court." Where a trial court treats a motion to dismiss as one for summary judgment, the court must grant the parties a reasonable opportunity to present Trial Rule 56 materials. *See* Ind. Trial Rule 12(B). The trial court's failure to give explicit notice of its intended conversion of a motion to dismiss to one for summary judgment is reversible error only if a reasonable

---

[2] The hearing was not transcribed.

5

opportunity to respond is not afforded to a party and the party is prejudiced as a result.[3] *Azhar v. Town of Fishers*, 744 N.E.2d 947, 950 (Ind. Ct. App. 2001) (citation omitted).

It appears the trial court treated Miller Pipeline and Liberty Mutual's motion to dismiss as a motion for summary judgment; thus, we apply the summary-judgment standard. The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Id.* (citation omitted). The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact. Ind. Trial Rule 56(C). It is only after the moving party makes a prima facie showing that there is no genuine issue of material fact that the burden shifts to the non-moving party to set forth specific facts showing the existence of a genuine issue for trial. Ind. Trial Rule 56(E).

Summary judgment was properly granted here. By the express language of the Assignment, Blair assigned "any and all claims, demands, cause or causes of action of any kind whatsoever against _____ (at fault party) and/or Liberty Mutual (at fault insurance carrier) . . . ." Blair did not assign any cause of action against Miller Pipeline: Miller Pipeline is not named anywhere in the Assignment, and the line for "at fault party" was left blank. And Blair had no direct cause of action against Liberty Mutual, Miller Pipeline's insurer. As a result, Blair had no cause of action against Liberty Mutual to assign. *See Cromer v. Sefton*, 471 N.E.2d 700, 703 (Ind. Ct. App.

---

[3] There is no evidence that Crown Capital was prejudiced by this conversion, nor does Crown Capital argue that it was. After Miller Pipeline and Liberty Mutual cited text from Crown Capital's website, the trial court held a hearing on the parties' motions; Crown Capital had an opportunity to respond to Miller Pipeline and Liberty Mutual's assertions at that time.

6

1984) ("[T]here is no duty or fiduciary relation running from the insurer to the injured plaintiff. The insurer's only duty is to the insured on its contract.").

Crown Capital argues that Blair obviously intended to assign the right to recover from Miller Pipeline, despite the fact that Miller Pipeline was not mentioned in the Assignment. *See* Appellant's Br. p. 7-8. But when construing a contract, unambiguous contractual language is conclusive upon the parties and the courts. *Hawa v. Moore*, 947 N.E.2d 421, 426 (Ind. Ct. App. 2011). If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument. *Id.* Because the Assignment is unambiguous, we do not examine the parties' intent.[4]

Because Blair failed to assign any valid cause of action to Crown Capital, Crown Capital has no claim to pursue, and the trial court properly granted summary judgment to Miller Pipeline and Liberty Mutual.[5]

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.

---

[4] Perhaps recognizing this, Crown Capital sought to reform the Assignment. Reformation is an extreme equitable remedy to relieve the parties in the case of mutual mistake or fraud. *Peterson v. First State Bank*, 737 N.E.2d 1226, 1229 (Ind. Ct. App. 2000) (citation omitted), *reh'g denied*. Reformation is appropriate only where: (1) there is a mutual mistake such that the written instrument does not reflect what the parties truly intended or (2) there has been a mistake on the part of one party accompanied by fraud or inequitable conduct by the other party. *Id.* Reformation may correct a scrivener's error where it is logically indicated that both parties were mistaken as to the actual contents of the instrument. *Id.* However, a mistake of law—such as a mistake as to the legal import of language used—will not normally support a claim for reformation. *Id.* Here, the errors in the Assignment amount to a mistake of law; specifically, a mistake regarding Blair's right to recover against Liberty Mutual. For this reason, reformation was not appropriate.

[5] Because we resolve this case on this ground, we need not address the parties' arguments regarding the mistake in the Assignment regarding the car model.