James LOWERY, Appellant–Defendant,

v.

HOUSING AUTHORITY OF the CITY OF TERRE HAUTE, Appellee–Plaintiff.

No. 84A01–0411–CV–489.

Court of Appeals of Indiana.

May 4, 2005.

---

Roderick E. Bohannan, Anne R. Babcock, Indiana Legal Services, Inc., Indianapolis, IN, Attorneys for Appellant.

Robert D. Hepburn, Stephen R. Leedy, Terre Haute, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant James Lowery ("Lowery") appeals an order of eviction, upon petition by Appellee–Plaintiff Housing Authority of the City of Terre Haute ("Housing Authority").[1] We affirm.

### Issues

Lowery presents two issues for review, which we restate as the following:

I. Whether Lowery was denied procedural due process in the termination of his tenancy and rent subsidy; and

II. Whether Lowery was denied substantive due process because the Housing Authority failed to show good cause for eviction.

### Facts and Procedural History

Lowery, the custodial parent of two minor children, is disabled. He and his minor children previously resided in the Mor-

---

**1.** On April 13, 2005, we held oral argument in this matter at St. Mary of the Woods College in St. Mary of the Woods, Indiana. We wish to thank St. Mary of the Woods College and its staff for their hospitality.

ton Lewis Court Community, a public housing complex owned by the Housing Authority. Lowery's rent was $51.00 per month. The one-year lease was executed on November 6, 2003, and listed Lowery and his two minor children as the only members of the household. The Low Income Housing Act of 1937, § 8, as amended, 42 U.S.C.A. § 1437 ("the Act"), dictated the terms of the lease, which prohibited unlisted tenants or boarders and criminal activity.

On March 30, 2004, Detective Wallace of the Terre Haute Police Department investigated a complaint that Lowery's eighteen-year-old stepson, Joshua Peak ("Peak") caused a disturbance at Oubache Elementary School, which was located adjacent to the Morton Lewis complex. Detective Wallace advised Housing Authority property manager Patricia McGee ("McGee") that Peak appeared to be living at Lowery's apartment. On March 31, 2004, McGee verbally warned Lowery that Peak was not allowed to reside in Lowery's apartment. That same day, McGee sent Lowery a letter summarizing the conversation.[2] On April 8, 2004, Lowery met with McGee and discussed the situation. According to McGee, Lowery stated that he didn't know how to make Peak leave.

On April 27, 2004, Detective Walls again contacted McGee to apprise her of another disturbance involving Peak and students at the elementary school, and informed her that Peak was living at Lowery's apartment. That same day, McGee advised Lowery in writing that Peak was not permitted at Lowery's apartment, and that Lowery's lease would be terminated if Peak was found on the premises. The

letter was dispatched to Lowery via certified mail, and Lowery signed the postal service receipt on April 28, 2004. The letter provided in pertinent part as follows:

> Mr. Joshua Peak is not allowed on the premises. He is not a tenant and I am warning you that if he is found on the Terre Haute Housing Authority's property, the Terre Haute Police Department will be called to remove him if necessary. I have informed investigators of this. If at any time I receive verification that you are again allowing Mr. Peak or any other unauthorized boarders, your lease will immediately terminate and I will inform the proper agencies of my intent to evict you.

(Appellee's App. 6). On the same day that Lowery received the certified letter, McGee witnessed an altercation in which several young men were threatening Peak, who was standing outside Lowery's apartment. McGee called the police, and also spoke with Lowery. When McGee questioned Lowery as to why Peak was there, Lowery indicated, "he had let him stay there at his apartment." (Tr. 20.)

At McGee's initiation, the Housing Authority sent Lowery a Notice of Lease Termination, dated April 28, 2004, citing Lowery's non-compliance with paragraph X of the lease, which provides in pertinent part as follows:

> Tenant shall be obligated
>
> (b) Not to give accommodation to boarders or lodgers;
>
> > To act, and cause household members or guests to act in a manner that will:
> >
> > > a. Not disturb other residents' peaceful enjoyment of their accommodations; and

---

**2.** McGee's letter to Lowery was as follows: "This is a follow up letter to you regarding JOSH PEAK and my direct warning to you not to allow him on the premises nor to reside in your apartment. Please do not put your housing in jeopardy. You stated you understood and there would be no more incidents. I will terminate your lease if you chose [sic] to continue to allow this. I will be monitoring the situation and trust you will do the right thing." (Appellee's App. 5.)

b. Be conducive to maintaining all properties in a decent, safe, and sanitary condition.

(*o*) To assure that Tenant, any member of the household, a guest, or another person under Tenant[s] control, shall not engage in:

a. Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the housing premises by other residents or employees of the Landlord and/or Management Agent[.]

(Appellee's App. 7.)

On May 3, 2004, Lowery met with McGee and advised her that he had "gotten rid of" his unauthorized boarder. (Tr. 24.) McGee informed Lowery that he had a right to request a hearing before a hearing officer and that his request for a hearing should be made within ten days of receiving his notice of termination (which was dated April 28, 2004). On May 18, 2004, the Housing Authority received Lowery's letter requesting a hearing. McGee's supervisor, Kevin Wells, advised Lowery that his request was untimely.

On July 15, 2004, the Housing Authority filed a Complaint for Possession of Real Estate in small claims court. A hearing was held on August 31, 2004. On October 14, 2004, the trial court granted an Order of Eviction, stating in pertinent part:

Defendant had ample notice that his stepson was not to be on Housing Authority property and that he could not or would not comply with that requirement which was a valid and reasonable term of his occupancy.

Lowery now appeals.

### Discussion and Decision

#### I. Standard of Review

 The claim was tried before the bench in small claims court. We review for clear error. *Flint v. Hopkins,* 720 N.E.2d 1230 (Ind.Ct.App.1999). A judgment in favor of a party having the burden of proof will be affirmed if the evidence was such that a reasonable trier of fact could conclude that the elements of the claim were established by a preponderance of the evidence. *Id.* We presume the trial court correctly applied the law. *Barber v. Echo Lake Mobile Home Comm.,* 759 N.E.2d 253, 255 (Ind.Ct.App.2001). Additionally, we give due regard to the trial court's opportunity to judge the credibility of the witnesses, and do not reweigh the evidence, but consider only the evidence and reasonable inferences therefrom that support the trial court's judgment. *Id.* A deferential standard of review is particularly appropriate in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice according to the rules of substantive law. *Id.*

#### B. Analysis—Procedural Due Process

 Initially, Lowery asserts that he had a right to reasonable accommodation of visitors, but was denied procedural due process when his stepson was placed on a list of persons banned from entering the public housing complex, without a hearing. The letter from McGee barring Peak from the apartment was not accompanied by notice of hearing procedures. Lowery claims he had a right to a formal hearing, and should have been informed in writing as to how he could request a formal hearing. 24 C.F.R. § 966.53(c) provides as follows:

"Elements of due process" shall mean an eviction action or a termination of tenancy in a State or local court in which the following procedural safeguards are required:

(1) adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;

(2) Right of the tenant to be represented by counsel;

(3) Opportunity for the tenant to refute the evidence presented by the PHA including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have;

(4) A decision on the merits.

Lowery appears to argue that the full panoply of procedural safeguards was triggered by the Housing Authority management decision to ban Peak, as opposed to the action for termination of tenancy. However, Lowery did not timely request a grievance hearing following his notice of lease termination as permitted by the Act, which would presumably have afforded him the opportunity to challenge the predicate actions of the Housing Authority. Moreover, while Lowery testified at trial that he wasn't given the opportunity to appeal the decision to ban Peak as a visitor, he did not offer any authority for his claimed entitlement to specific notice and hearing in regard to visitation rights as opposed to tenancy rights.[3]

Lowery did not timely avail himself of his right to an administrative hearing prior to the initiation of eviction proceedings in state court. The Housing Authority filed a petition for possession of premises, and Lowery pursued no claim against the Housing Authority. As such, the sole issue actually tried in small claims court was whether Lowery must surrender his leased premises because he breached his lease. Lowery has not established that he was denied procedural due process in the eviction.

## II. Substantive Due Process Claim— Good Cause for Eviction

■ Due process under the Fourteenth Amendment requires a determination of good cause to support termination of public housing tenancy during the term of the lease. *Numme v. Lemon*, 191 Misc.2d 133, 741 N.Y.S.2d 384 (2002). When a housing authority decides to terminate a tenancy or subsidy, it must provide the tenant a written notice stating the specific grounds for termination. 24 C.F.R. 966.4(*l*)(3)(C)(ii). A public housing tenant may be evicted upon a showing of "good cause." 24 C.F.R. 966.4(*l*)(2). Grounds for termination include "serious or repeated violation of material terms of the lease[.]" 24 C.F.R. 966.4(*l*)(2)(i). Also included is criminal activity. 24 C.F.R. 966.4(*l*)(2)(B)(iii)(A).

Pursuant to 24 C.F.R. 966.4(*l*)(5)(ii)(A), a public housing lease must provide that "any criminal activity by a covered person that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents ... is grounds for termination of tenancy." 24 C.F.R. 5.100 defines a "covered person" as a "tenant, any member of the tenant's household, a guest or another person under the tenant's control."

Although Lowery did not admit that Peak engaged in criminal activity, Lowery admitted that he allowed his stepson to board with him for "probably about a month." (Tr. 93.) However, Lowery argues that he could not control his Peak's behavior, and thus the eviction of himself and his dependent children is punitive rather than "for good cause." Too, he claims he evicted Peak as soon as he was made aware it was in violation of his lease. Lowery further contends that he should not be held strictly liable for behavior of

---

**3.** Lowery did not assert a § 1983 claim that the Housing Authority violated his right to reasonable accommodation of visitors under the Act. *See, e.g., Diggs v. Housing Authority of the City of Frederick*, 67 F.Supp.2d 522 (D.Md. 1999).

another adult whom he could not control, and that the Housing Authority management defined criminal activity too expansively.

Lowery claims it is "debatable" whether or not Congress intended to impose a strict liability standard making tenants liable for the actions of covered persons. Reply Br. at 10. His argument is apparently predicated upon the decision in *Delaware Co. Housing Authority v. Bishop*, 749 A.2d 997 (Pa.Comm.2000), to which he directed the trial court's attention. Therein, a county housing authority sought to evict a public housing tenant whose adult sons had committed rape and possessed drugs. The commonwealth court "refuse[d] to hold a tenant strictly liable for unforeseeable criminal acts committed, without the tenant's knowledge, by family members who are not under the tenant's control." *Id.* at 1002. In part, the commonwealth court relied upon *Charlotte Housing Auth. v. Patterson*, 120 N.C.App. 552, 464 S.E.2d 68 (1995), wherein the Court observed that 42 U.S.C. § 1437d(*l*) (requiring a lease term that criminal drug activity by household member or guest under tenant's control is cause for termination of tenancy) was not intended to impose a type of strict liability whereby the tenant is responsible for all criminal acts regardless of knowledge and ability to control them. However, in *Dep't of Housing and Urban Develop. v. Rucker*, 535 U.S. 125, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002), the Court held that 42 U.S.C. § 1437d(*l*) "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members and guests whether or not the tenant knew, or should have known, about the activity." *Id.* at 130, 122 S.Ct. 1230. A "household member or guest" is one to whom "access to the premises has been granted by the tenant." *Id.* at 131, 122 S.Ct. 1230.

It does not appear that Peak's problems are drug-related, arguably invoking the strict liability implications of *Rucker.* Moreover, it is not apparent from the record that Lowery could exert physical control over Peak. It may be unduly burdensome to expect a physically infirm individual to restrain a young and able-bodied individual from entering any part of the Housing Authority premises. In this case, the Housing Authority apparently expected Lowery to do so, although the Housing Authority admittedly failed to seek a restraining order despite breaches of the peace. Nevertheless, regardless of whether Peak engaged in criminal activity or Lowery was able to prevent Peak's alleged criminal activity, the record reveals an alternative basis for Lowery's eviction.

■ Lowery admittedly permitted Peak to remain in Lowery's apartment for about a month, despite the prohibition against boarders, and did not seek to add Peak as a named tenant. Lowery's generous rent subsidy was calculated upon the assumption that he was the only adult in the household. Moreover, there is evidence from which the trial court could infer that Lowery allowed or invited Peak to return to the apartment despite his protestations to McGee. We will affirm a general judgment on any legal theory supported by the evidence introduced at trial. *D.A.X., Inc. v. Employers Ins. of Wausau*, 659 N.E.2d 1150, 1155 (Ind.Ct.App.1996), *trans. denied.* Accordingly, the Housing Authority presented sufficient evidence to establish its claim for eviction by a preponderance of the evidence.

Affirmed.

BAKER, J., and NAJAM, J., concur.