**Mark McKEIGHEN, Appellant,**

v.

**DAVIESS COUNTY FAIR BOARD and Rob Webster, Appellees.**

**No. 14A04–0906–CV–349.**

Court of Appeals of Indiana.

Dec. 30, 2009.

---

Larry W. Medlock, Medlock Law Office, Paoli, IN, Attorney for Appellant.

Harry W. Hanson, Washington, IN, Attorney for Appellees.

## OPINION

FRIEDLANDER, Judge.

Mark McKeighen appeals a judgment in favor of the Daviess County Fair Board and Rob Webster (hereinafter collectively referred to as the Fair Board) in McKeighen's small claims action against the Fair Board stemming from his disqualification from the Daviess County Demolition Derby. McKeighen presents the following restated issues for review:

1. Did the Fair Board breach its contract with McKeighen?

2. Did the trial court err in refusing McKeighen's request for findings and conclusions?

4. Was the Fair Board guilty of conversion for failing to award McKeighen first-place prize money?

4. Did the Fair Board defame McKeighen?

We affirm.

The facts favorable to the judgment are that the Daviess County Fair Board sponsored a demolition derby to be held on August 13, 2008 and published an invitation to enter. McKeighen had earlier purchased a car, which he claimed was a 1973 Chrysler, for use in demolition derbies and decided to enter the Daviess County Demolition Derby (the Derby) with that car. Although Daviess County had held demolition derbies before, this would be McKeighen's first. The Fair Board sent a set of the rules to McKeighen. We will discuss one of the rules in greater detail below.

When McKeighen arrived at the fair grounds on the day of the Derby, he unloaded his car from its trailer and two officials inspected the car. They instructed McKeighen "to cut some items off of [his] vehicle", and he did so. *Appellant's Appendix* at 9. Upon re-inspection approximately fifteen minutes later, the inspectors declared his vehicle legal and "said [he] was good to go." *Id.* The Derby consisted of two heats with three or four cars participating in each heat. McKeighen won the first heat, after which his car was re-inspected and passed into the final heat. McKeighen's car was the last one running in his class after the final heat.

Very shortly after the final heat was over, Beau Gray, a timer, suggested that McKeighen's car may be a Chrysler Imperial. The rules that had been provided to McKeighen and all participants specified that certain vehicles were ineligible to compete. A Chrysler Imperial was one such car. Imperials are banned because they have a different, much stronger

framework than other cars, which makes them more durable and thus poses a danger to other drivers in the competition. McKeighen had read and understood that rule. Post-heat inspections typically are focused on searching for forbidden modifications made to the car. In light of the nature of Gray's complaint, however, Webster, who was the head official at the Daviess County Fair, inspected the vehicle to determine the type of car McKeighen was driving. Because demolition derby cars are highly modified, it is sometimes not a straightforward task to determine their make and model. Webster first removed tape covering the middle of McKeighen's steering wheel and found a Chrysler Lebaron emblem underneath. A Lebaron is an Imperial. Webster decided that the most reliable way to determine what kind of car McKeighen used was to check its vehicle identification number (VIN). To that end, Webster removed the VIN plate from the dashboard of the car and gave it to a police officer, who ran a search on the VIN. It showed that the car was an Imperial. Nevertheless, McKeighen maintained that his car was not an Imperial. Within ten minutes after the Derby was over, and following this post-Derby inspection, McKeighen was disqualified for driving an Imperial and the second-place car was declared the winner and awarded the $1500 first-prize money.

This action was commenced in the Daviess Superior Court, Small Claims Division on January 5, 2009, when McKeighen filed his Notice of Claim. A trial was conducted on March 30, 2009. The Court, after taking the matter under advisement, asked the parties to submit briefs. On April 24, 2009, the court entered judgment against McKeighen.

Because this case was tried before the bench in small claims court, we review for clear error. *Lowery v. Housing Auth. of* *City of Terre Haute,* 826 N.E.2d 685 (Ind. Ct.App.2005). We will affirm a judgment in favor of a party having the burden of proof if the evidence was such that a reasonable trier of fact could conclude that the elements of the claim were established by a preponderance of the evidence. *Id.* We presume that the trial court correctly applied the law and give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Id.* We will not reweigh the evidence, and we will only consider the evidence and reasonable inferences therefrom that support the trial court's judgment. *Id.*

1.

McKeighen contends the Fair Board breached its contract with him. The substance of McKeighen's contract argument is reflected in the following:

McKeighen was allowed to participate in the heat and final, he expended gasoline, exposed his car and himself to the impacts and damages of collisions with other motor vehicles used by other drivers as guided projectiles, performed for and entertained the spectators whom [sic] paid money to the Board to see the event. At no time prior to winning the final event was McKeighen notified that he might be disqualified or asked to provide proof of the model of his vehicle. McKeighen could only believe that by being given the flag to participate, being inspected several times, allowed to enter the final heat, that if he was the last car running he would receive the benefit of his bargain and his performance, the prize money.

*Appellant's Brief* at 7. The Fair Board counters that McKeighen breached the terms of the contract by using a forbidden vehicle.

▮ The construction of a contract and an action for its breach are matters of judicial determination. *Fratus, et al. v.*

*Marion Cmty. Sch. Bd. of Trustees,* 749 N.E.2d 40 (Ind.2001). The elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *Gatto v. St. Richard Sch., Inc., et al.,* 774 N.E.2d 914 (Ind.Ct. App.2002). When construing a contract, unambiguous contractual language is conclusive upon the parties and the courts. *S.C. Nestel, Inc. v. Future Constr., Inc.,* 836 N.E.2d 445 (Ind.Ct.App.2005). If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument. *Id.*

█ McKeighen acknowledges that the rules provided to him in advance of the Derby clearly specified that Imperials were not permitted in the event, and that he understood this restriction. With these acknowledgments in mind, McKeighen's contract argument may be winnowed to two assertions: (1) the vehicle he used in the Derby was not, in fact, an Imperial; thus he did not breach the contract terms; or, in the alternative, (2) regardless of whether his vehicle was an Imperial, by giving him the flag to compete in the final heat and allowing him to participate in that round, the Fair Board effectively waived the no-Imperial restriction and could not thereafter enforce that restriction.

As to the first argument, the evidence was in conflict. Both parties seem to acknowledge that determining a vehicle's model is not always a simple task in the world of demolition derbies. Due in large part to the fact that derby cars are often modified, sometimes extensively, the vehicles presented for inspection can be a hodgepodge of different vehicles, with the engine being from this model, the suspension from that model, and the body from yet a different model. On top of these differing structural components, both parties at least tacitly acknowledge that ornamental emblems and insignia might be attached just for show value and do not necessarily indicate, for instance, that a hearse hood ornament (if indeed there is such a thing) indicates the vehicle is actually a hearse (which, like an Imperial, is forbidden by the rules).

In the instant case, the evidence tending to show that McKeighen's vehicle was an Imperial consisted of two items: the vehicle's VIN plate and the insignia in the center of the steering wheel. McKeighen does not deny that the steering wheel insignia was covered with tape until the Derby was complete, and that when officials uncovered it after the final heat it turned out to be that of an Imperial Lebaron. He contends, however, that such does not indicate the vehicle actually was an Imperial, but is merely attributable to the fact that Derby cars often are an amalgam of pieces and parts of multiple cars. He explained that he taped over the Imperial steering-wheel emblem "[f]or the reason that the vehicle if somebody had seen the word, they would say oh, he does have an Imperial or something so I just put a piece of tape so you know it would not cause controversy." *Transcript* at 27. The trial court was entitled to attach whatever significance it chose to the presence of the Imperial emblem and the fact that it was taped over.

The evidence relative to the VIN number is significantly more controversial. Webster claimed that after he uncovered the Imperial emblem on the steering wheel, he decided that the surest way to tell what kind of vehicle McKeighen was using was to check the VIN number. To that end, he detached the VIN plate, which was affixed to the dashboard in front of the driver's seat, and handed it to a police officer for the purpose of running the number. The officer came back a few moments later and reported that the VIN was for an Imperial, after which Webster de-

clared the car illegal and disqualified McKeighen. At that point, the officer threw the VIN plate onto McKeighen's back seat. When Webster saw the VIN plate in the back seat, he retrieved it and took it home with him. That night, he did his own research, which confirmed the officer's information, indicating that the VIN was for a 1974 Imperial Lebaron. The Fair Board introduced at the hearing this VIN plate and a print-out of the result of Webster's internet research.

McKeighen produced a different VIN plate at the hearing. McKeighen's testimony indicates, or at least implies, that he saw the officer throw the VIN plate onto his rear seat. In any event, he testified that when he stopped for gas on the way home after the Derby, he retrieved a VIN plate from the rear seat of his Derby car. The next day, he contacted an unidentified Indiana State Police trooper, gave him the number, and asked for information about the vehicle. McKeighen testified that the trooper "called Jasper and said that they couldn't even get it to come up to what kind it was."[1] Transcript at 92. McKeighen then conducted his own research and discovered that the number corresponded to a 1978 New Yorker Brougham. McKeighen contended at the hearing and on appeal that his Derby car was in fact a 1978 New Yorker Brougham, not an Imperial.

The question of whether McKeighen's vehicle was an Imperial was a determination of fact, not law, and thus we review for clear error. *Lowery v. Housing Auth. of City of Terre Haute*, 826 N.E.2d 685. In so doing, we will not reweigh the evidence or revisit credibility determinations. *Id.* We cannot say that McKeighen's evidence in favor of his claim in this regard is of such a character as to compel the conclusion that his vehicle was *not* an Imperi-

al. Therefore, to the extent his breach-of-contract claim depends upon this determination, it fails.

■ The alternative basis of McKeighen's breach-of-contract claim is that the Fair Board waived the right to disqualify his car as non-complying after the car passed two inspections and was allowed to participate in the final heat. In order to assess the merits of this claim, we must examine the contract, which in this case both sides agree consists of the Daviess County Regular Big Car Demo Rules and Regulations. We list here the rules and regulations that tend to support the trial court's judgment:

A. ABSOLUTELY NO IMPERIALS, SUICIDE DOOR LINCOLNS, HEARSE, AMBULANCE OR TRUCK TYPE VEHICLES WILL BE ALLOWED TO COMPETE.

\*   \*   \*   \*   \*   \*

G. . . . Any driver not obeying these rules shall be disqualified by a Fair Board Official.

\*   \*   \*   \*   \*   \*

J. It is the responsibility of the driver to correctly identify his make and model of car on entry and inspection forms. Any false information will be [sic] automatic disqualification.

\*   \*   \*   \*   \*   \*

M. ALL DECISIONS OF DERBY OFFICIALS ARE FINAL. . . .

\*   \*   \*   \*   \*   \*

18. All vehicles entered shall be inspected before being numbered. Car numbers shall be on a 12″ tall by 20″ long plate (metal or otherwise) bolted or

---

1. We assume "Jasper" refers to an Indiana State Police facility.

welded to the top of the car! This also applies to the mini cars! Cars may be inspected after race!

*Appellant's Appendix* at 8–9 (emphasis in original). Taken together, the foregoing clearly convey a qualification and inspection regimen that included the following: (1) Imperials were not permitted to participate in the Derby, (2) upon penalty of disqualification, participants were obligated to accurately identify the make and model of their car, (3) cars could be inspected at any time, including post-race, (4) failure to obey the rules would result in disqualification, and (5) the decisions of the Derby officials were final. We perceive nothing in these or the remaining rules and regulations that restricts the Fair Board's right, after a given point in time or a particular stage of the events, to disqualify a participant for breaking the rules. To the contrary, the rules specified, indeed *stressed*, that cars remained subject to inspection even after a race had ended. Were we to construe the contract as McKeighen urges, such a post-race inspection would be rendered entirely pointless. *See Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211 (Ind.Ct.App.2009) (we will attempt to construe the language of a contract such that no words, phrases, or terms are rendered ineffective or meaningless).

McKeighen correctly points out that the contract required him to be the last car running at the end of the Derby's final heat in order to win the prize money. This was certainly *a* requirement for winning the prize money, but it was not the *only* requirement. As explained above, the rules stressed in several places that only vehicles conforming to the rules would be eligible to compete and, by inference, win the prize. Moreover, McKeighen does not direct us to any provision in the rules and regulations that, with respect to time or occurrence, limits the Fair Board's ability to discover noncompliant vehicles and dis-

qualify them from the competition. Therefore, the trial court's conclusion that the Fair Board did not breach the contract was not clearly erroneous.

2.

■ McKeighen contends the small claims court erred in failing to enter findings and conclusions at his request. Our Supreme Court has held that small claims courts are not required to grant such requests. *See Bowman v. Kitchel,* 644 N.E.2d 878 (Ind.1995). It is not within our province to grant McKeighen's request to reconsider the Supreme Court's ruling.

3.

■ McKeighen contends the Fair Board was guilty of conversion for failing to award him first-place prize money. Under Ind.Code Ann. § 34–24–3–1 (West, PREMISE through 2009 1st Regular Sess.), one who proves the elements of criminal conversion by a preponderance of the evidence can recover up to three times the actual damages, the costs of the action, and reasonable attorney's fees. The elements necessary to establish a civil cause of action for conversion are found in the criminal conversion statute, although a plaintiff in a civil conversion action is required to prove those elements only by a preponderance of the evidence. *Anderson v. Indianapolis Indiana AAMCO Dealers Adver. Pool,* 678 N.E.2d 832 (Ind.Ct.App. 1997), *trans. denied.*

Indiana's criminal conversion statute, Ind.Code Ann. § 35–43–4–3 (West, PREMISE through 2009 1st Regular Sess.), defines conversion as the knowing or intentional exertion of unauthorized control over the property of another. As a result, in order to prevail on a claim of conversion, McKeighen would have to prove that the prize money was his property, i.e., that he had a legal right to it. We have determined in Issue 1 above that such is not the case. Therefore, the trial

court did not err in rejecting McKeighen's conversion claim.

4.

McKeighen contends the trial court erred in failing to rule that the Fair Board defamed him. In order to establish a defamation claim, a plaintiff must prove the existence of " 'a communication with defamatory imputation, malice, publication, and damages.' " *Trail v. Boys & Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 136 (Ind.2006) (quoting *Davidson v. Perron,* 716 N.E.2d 29, 37 (Ind.Ct.App. 1999), *trans. denied* ). To be actionable for defamation, the plaintiff must prove not only that the communication was defamatory in nature, but also that it was false. *Trail v. Boys & Girls Clubs of Northwest Indiana,* 845 N.E.2d 130.

The allegedly defamatory communication upon which this claim is based is described by McKeighen as follows: "Rob Webster disqualified McKeighen publicly accusing him of deceiving the fair officials and the public by the alleged use of a Chrysler Imperial." *Appellant's Brief* at 11. We will assume for the sake of argument that Webster did, in fact, make such a "public" declaration, although we note that the Fair Board disputes this assertion. Regardless, we observe that McKeighen has not established that the central tenet of such a declaration, i.e., that he used a Chrysler Imperial in the Daviess County Demolition Derby, was false. *See* Issue 1, *supra.* It follows that he therefore failed to establish all of the elements required to prove his defamation claim.

Judgment affirmed.

NAJAM, J., and BRADFORD, J., concur.