Mike HAWA, Appellant–Plaintiff,

v.

Gerald R. MOORE, Appellee–Defendant.

No. 87A01–1007–SC–344.

Court of Appeals of Indiana.

March 29, 2011.

---

Jonathan M. Young, Law Office of Jonathan M. Young, Newburgh, IN, Attorney for Appellant.

Robin R. Craig, Evansville, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Property owner Mike Hawa and contractor Gerald Moore entered into a contract for the installation of a recycled concrete base for a parking lot. When Moore walked off the job, Hawa filed a breach of contract claim in small claims court. Moore filed a counterclaim. Hawa now appeals the small claims court's $4745 judgment in favor of Moore on his counterclaim. He contends that the court clearly erred by ruling in favor of Moore and improperly calculating damages and denied him due process by not giving him an opportunity to defend against Moore's counterclaim or rebut Moore's testimony. We conclude that Hawa repudiated the contract by failing to provide Moore with adequate assurance that he would pay for Moore's services. The small claims court thus did not err by ruling in favor of Moore. However, the court erred by

awarding Moore the cost of transporting certain materials after the lawsuit was filed, damages that Moore should have used reasonable diligence to mitigate. Finally, because the transcript shows that Hawa rejected the court's offer to reschedule the matter for any further evidence, he was not denied due process. We therefore affirm in part, reverse in part, and remand for a reduction in the damage award.

### Facts and Procedural History

Hawa was interested in constructing a parking lot for a new building at his storage facility in Warrick County. In December 2008, Moore prepared an estimate to install a base that Hawa could later top with either finishing gravel, concrete, or pavement. The estimate indicated that Moore would use recycled concrete and also provided the terms of payment:

> Recycled concrete base for parking area approx. 150x200 ft
> Hauling ruff grading power raking Approx. $13,500.00
> Non compaction and no under laying fiber cloth
> Man[ne]r of payment—$5000.00 down to start work—*$5000.00 due when half of area is done*—Remaining balance is due upon 75% of work completion due to remaining material cost = $3500.00

Petitioner's Ex. 1 (emphasis added). The parties later agreed to reduce the contract price from $13,500 to $12,000. Moore asked Hawa to meet him at a location where he had installed recycled concrete so that Hawa could see samples prepared with the material and observe it supporting heavy traffic. In February 2009, Hawa looked at the samples and handed Moore a $5000 check to begin work.

Moore began work about a week later. He obtained two types of recycled concrete, each from a different supplier. From K–Enterprises, he bought $3000 and reserved $2000 of # 2 rock. From IMI, he obtained # 53 rock at no cost. Moore used J Stucki Trucking to transport the materials and some equipment to Hawa's storage facility at a cost of $3795.

The material Moore sent to Hawa's storage facility was placed into nine piles. When Hawa saw the piles, he complained that there was wire in the rocks and told Moore that he would not make the second payment because he was "not happy." Tr. p. 10, 45.[1] He also went to K–Enterprises to attempt to switch the product. Respondent's Ex. C. After Moore assured him that any wire would be separated from the rocks, Hawa allowed Moore to spread six of the nine piles. When Moore asked about the second $5000 payment, Hawa told him that he needed to see eighty percent of the parking lot done before he would make the second payment. Tr. p. 16.

At some point, Hawa told Moore that his bank would not advance him any more money for the second $5000 payment until it could inspect the work. Hawa claimed that the bank wanted to see the power rake blender, which separates the wire out and levels and grades the rock. Moore told Hawa that he "would meet at any convenient time with him and his banker." *Id.* at 80. Hawa said he was in the process of scheduling an on-site meeting between the parties and the bank. Moore then moved the power rake blender to the front of Hawa's property, ready to meet the bank and complete the job, but the bank never visited the site. Moore left the power rake blender at Hawa's property for five days before he walked off the job.

---

**1.** The record includes transcripts of the March 2010 hearing at which the trial was rescheduled and the June 2010 hearing at which the parties presented evidence. We refer to the June 2010 hearing as "Tr." and the March 2010 hearing as "Mar. Tr."

In March 2009, Hawa filed a breach of contract claim against Moore in small claims court. Two months later in May 2009, Moore had more free # 53 rock hauled to his own property, where he stockpiled it for use on Hawa's project, at a transportation cost of $1500. Moore subsequently filed a counterclaim demanding payment on the contract. At trial, Moore submitted a list of total costs incurred for Hawa's project, which totaled $10,495. *See* Respondent's Ex. A. Moore's list included the $1500 cost of hauling the free # 53 rock to his own property. Hawa vehemently denied that half of the area of the parking lot was done as required by the contract.

During the trial, the small claims court cut off Hawa's cross-examination of Moore because of time constraints. The court twice gave the parties the choice of either rescheduling the matter for further evidence, allowing the parties to submit their arguments by memoranda, or ruling from the evidence that had been presented. Both parties indicated that the court could rule from the evidence that had been presented.

The court ruled in favor of Moore and awarded him a judgment of $4745:

> [T]here's a lot that goes into a project that just doesn't happen on the ground. And you don't see that. The planning of it, the organization of it, the hauling of it and etc. like that. I doubt if he had fifty percent of the work done on the ground that you saw, and that was your concern. But there's another side of that picture there's a lot of work that goes into it prior to that time. The big issue I have,

> he's got that ten thousand four hundred ninety five dollars. I understand that ten thousand four hundred ninety five dollars. I disagree with some of it. And the part I disagree with is the part that is stock piled on the property that is not on his property. And the fifteen hundred dollars is just to put that property over there because evident[ ]ly it became a free product to . . . him. But he did invest the fifteen hundred dollars into that program, for this. I think he could probably recover most of that money if he uses it on another project. So it's not on this. And I'd give fifty percent for the cost of hauling. Saying that I give him the judgment, I give on the cross complaint a judgment of nine thousand let me get my figures here, nine thousand seven hundred and forty five dollars and he's already paid five thousand dollars, so the defendant has a judgment of four thousand seven hundred and forty five dollars.

Tr. p. 110–11. Hawa filed a motion to correct error, which was denied.

Hawa now appeals.[2]

### Discussion and Decision

Hawa contends that the small claims court clearly erred by ruling in favor of Moore and improperly calculating damages and denied him due process by not giving him an opportunity to defend against Moore's counterclaim or rebut Moore's testimony.

### I. Judgment in Favor of Moore

■ Hawa first contends that the small claims court clearly erred by ruling in favor of Moore.

2. Indiana Small Claims Rule 11(A) provides, "All judgments shall be reduced to writing signed by the court, dated, entered in the Record of Judgments and Orders, and noted in the small claims judgment docket and the Chronological Case Summary." A copy of the small claims court's judgment has not been provided to us on appeal. *See* Ind. Appellate Rule 50(A)(2)(b) (indicating that the appellant's Appendix must include the appealed judgment or order).

■ Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). The clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1067 (Ind.2006). This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law. *Id.* at 1067–68. In determining whether a judgment is clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses but consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Counceller v. Ecenbarger, Inc.,* 834 N.E.2d 1018, 1021 (Ind. Ct.App.2005).

■ The construction of a contract and an action for its breach are matters of judicial determination. *McKeighen v. Daviess Cnty. Fair Bd.,* 918 N.E.2d 717, 720 (Ind.Ct.App.2009). The elements of a breach of contract action are the existence of a contract, the breach thereof, and damages. *Id.* at 721. When construing a contract, unambiguous contractual language is conclusive upon the parties and the courts. *Id.* If an instrument's language is unambiguous, the parties' intent is determined from the four corners of the instrument. *Id.*

Hawa argues that the unambiguous language of the contract provides that the second $5000 payment is to be made "when half of [the] area is done." He claims that he did not breach the contract by failing to make the second payment because less than half of the area was complete, and thus, his performance was not yet due. Hawa points to the small claims court's statement that it "doubt[ed that Moore] had fifty percent of the work done on the ground" to support his claim that the court clearly erred by finding him in breach of contract.

■ We need not determine if the evidence supports the conclusion that half of the parking lot was completed because the facts most favorable to the judgment show that Hawa repudiated the contract. Repudiation of a contract must be positive, absolute, and unconditional. *Jay Cnty. Rural Electric Membership Corp. v. Wabash Valley Power Ass'n,* 692 N.E.2d 905, 911 (Ind.Ct.App.1998), *trans. denied.* "Mere expression of doubt as to [a party's] willingness or ability to perform is not enough to constitute a repudiation, although such an expression may give an obligee reasonable grounds to believe that the obligor will commit a serious breach and may ultimately result in a repudiation...." Restatement (Second) of Contracts § 250 cmt. b (1981). When the obligee reasonably believes that the obligor will not perform, the obligee may demand assurance of performance, and the failure of the obligor to give adequate assurance may be treated as a repudiation:

(1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243 [Effect of a Breach by Non–Performance as Giving Rise to a Claim for Damages for Total Breach], the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.
(2) The obligee may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of

due performance as is adequate in the circumstances of the particular case. *Id.* § 251. "The rule is a generalization, applicable without regard to the subject matter of the contract, from that of Uniform Commercial Code § 2–609." *Id.* at cmt. a. A party demanding assurances must do so in accordance with the duty of good faith and fair dealing in the enforcement of the contract. *Id.* at cmt. d. "Whether a particular demand for assurance conforms to that duty will depend on the circumstances." *Id.* "The demand need not be in writing." [3] *Id.*

Here, Hawa complained about the recycled concrete even though the contract provided for its use, he told Moore he would not make the second $5000 payment because he was "not happy," and he went to Moore's supplier and asked for a switch in product. Further, despite the contract providing for the second payment of $5000 when half of the area was completed, Hawa told Moore that he would not make the second payment until eighty percent of the work was done. Moreover, Hawa claimed that his bank would not release funds for the second $5000 payment until it could inspect the work and see the power rake blender. These facts gave Moore reasonable grounds to believe Hawa would not pay him and therefore intended to breach the contract.

Moore was thus entitled to demand adequate assurance from Hawa that he would pay. Hawa and Moore agreed that a bank representative would inspect the work to determine if the bank would release the funds to Hawa. Moore brought the power rake blender to the site for that meeting. At least five days passed with the power rake blender sitting unused at the front of the storage facility, but the bank representative never came. Hawa failed to provide within a reasonable time adequate assurance of due performance. Moore was thus entitled to treat this failure as a repudiation of the contract. The small claims court did not err by ruling in favor of Moore on his counterclaim.

## II. Damages

 Hawa next contends that the small claims court clearly erred in its calculation of damages. A party injured by a breach of contract is limited in his recovery to the loss actually suffered, and he may not be placed in a better position than he would have enjoyed had the breach not occurred. *Crider & Crider, Inc. v. Downen*, 873 N.E.2d 1115, 1118 (Ind.Ct.App. 2007). As a general rule, a non-breaching party must mitigate damages. *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 660 (Ind.Ct.App. 2004). However, this general rule is not without exception or limitation. *Id.* The breaching party has the burden of proving that the non-breaching party has failed to use reasonable diligence to mitigate damages. *Id.*

Hawa claims that Moore should not be awarded $2000 for the reserved # 2 rock from K–Enterprises or any of the $1500 it cost to have it hauled to Moore's property in May 2009 after the small claims case was filed because Moore had a duty to mitigate damages.

As an initial matter, Hawa misconstrues the evidence. Contrary to Hawa's claim, the $1500 charge was not for the transport of the reserved # 2 rock from K–Enterprises.[4] Instead, the $1500 charge was for

---

3. An exception applies to contracts for the sale of goods, where demands of adequate assurance must be in writing. *See* U.C.C. § 2–609; Ind.Code § 26–1–2–609.

4. We note that Moore's list of total costs incurred, Respondent's Ex. A, includes two charges of $1500 that appear to be for the same May 2009 hauling of the free # 53 rock to Moore's property. *See* Tr. p. 95, 99, 100;

the transport of the free # 53 rock in May 2009. *See* Respondent's Ex. F (May 2009 bill from J Stucki Trucking charging Moore $1500 for "Hauling of recycled materials from IMI concrete on Evansville's eastside to Heckle Rd. Recycled concrete approximately # 53 size rock from IMI concrete on the Westside hauled to Staubes Lane. Trucking expense only."). The small claims court acknowledged this when it stated that the $1500 charge was for the "free product." Thus, the gist of the court's statement was that it was giving Moore only half of the $1500 hauling charge because it believed Moore could recover some of that money by using the free # 53 rock on other projects.

We do, however, agree with Hawa's mitigation argument. Moore walked off the job when the bank failed to show up to inspect the work. Hawa filed his breach of contract claim in March 2009. It was clear by this time that Hawa was not going to pay and that Moore had treated the contract as repudiated. Thus, Moore should have used reasonable diligence to mitigate damages. Stated differently, Moore should not have incurred the $1500 cost of hauling more materials after Hawa had filed the small claims suit. Although the small claims court awarded Moore only $750 of the $1500 cost of hauling the free # 53 rock to his own property, we conclude that the court erred by including any of the $1500 charge in Moore's damages.

■ To the extent Hawa intertwines within his mitigation argument that Moore should not have received damages for the $2000 he expended for the reserved # 2 rock, we disagree. Reserving the # 2 rock was one of the first things Moore did on Hawa's project. Tr. p. 70. Moore testified that dealing with recycled concrete is

"touch and go" and that he had to reserve the # 2 rock to ensure that he would have enough material to complete the project. *Id.* Furthermore, one of the letters from K–Enterprises makes clear that Moore was obligated to pay for the reserved # 2 rock for Hawa's project. Respondent's Ex. C.

Finally, Hawa claims that Moore's itemization showing $5000 for the cost of materials from K–Enterprises is "doubt[ful]" and "it is difficult to see where [Moore's] profit is." Appellant's Br. p. 9. This is an impermissible request for us to reweigh the evidence.

The $4745 damage award reflects the $5000 cost of # 2 rock, the $3795 cost of the initial hauling of materials and equipment, the $1500 cost of the May 2009 hauling of the free # 53 rock, and the $200 cost of front gate work requested by Hawa not covered in the contract, less the $750 deducted from the $1500 May 2009 hauling fee and Hawa's initial $5000 payment. Because Moore is not entitled to any of the $1500 May 2009 hauling fee, we reverse the small claims court's damage award and remand for a reduction of the award by $750, for a total judgment of $3995.

### III. Due Process

■ Hawa finally contends that the small claims court denied him due process by not giving him an opportunity to defend against Moore's counterclaim or rebut Moore's testimony. When the court set the trial date during the March 2010 hearing, it informed both parties that the court would have to end the hearing at noon. Mar. Tr. p. 8 ("I close at twelve so you gotta finish."). During the hearing, the court indicated that they were running out of time. Tr. p. 69 ("We've got a short time

Respondent's Ex. F. His calculation is correct, however, because it includes the $1500 amount only once.

left for [the] hearing."). The court later noted the limited time frame again. *Id.* at 91 ("I've got court at 1 o'clock. That's the reason we set it at nine, so we can be done.").

When the court finally ended the hearing, it twice gave the parties the choice of either rescheduling the matter for further evidence, allowing the parties to submit their arguments by memoranda, or ruling from the evidence that had been presented. Both parties indicated that the court could rule from the evidence that had been presented.

Despite the fact that Hawa rejected the court's offer to reschedule the matter for further evidence, he argues that the court "was not truly considering any further evidence" since it would not even allow him to continue his cross examination of Moore when he told the court he had only one more question. Appellant's Br. p. 10. It was reasonable, however, for the court to believe that "one more question" might turn into more than one question.

More importantly, the parties knew that the hearing would end at noon, and the court gave them the option of continuing the hearing to a future date. Hawa declined this invitation. We cannot say Hawa was denied due process.

Affirmed in part, reversed in part, and remanded for a $750 reduction in Moore's damage award, for a total judgment of $3995.

BAKER, J., and BARNES, J., concur.