**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CLIFFORD T. RUBENSTEIN**
Maurer Rifkin & Hill, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**JEFFREY M. BELLAMY**
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY B. PLUNKITT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1104-SC-171 |
| | ) | |
| BECKONING WAY COMMUNITY ASSOCIATION, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-0907-SC-419
Cause No. 32D04-1006-SC-384

**January 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

In two separate but related small-claims actions, Beckoning Way Community Association, Inc. (the Association) sued Gary Brian Plunkitt for unpaid association dues and assessments. Plunkitt filed a third-party complaint against Jeffrey M. Bellamy and Gemini Management, Inc. (Gemini) alleging violations of the Fair Debt Collection Practices Act (the FDCPA), i.e., 15 U.S.C. § 1692 – 1692o (2010) in pursuing assessments against Plunkitt on behalf of the Association. Plunkitt appeals judgments against him on both counts, presenting several issues. We resolve this appeal by addressing the following issues:

1.  Is Plunkitt estopped from denying his obligation to pay the fees and assessments of the Association?

2.  Did the trial court err in concluding that Gemini and Bellamy did not violate the FDCPA in pursing collection of Plunkitt's homeowner's fees?

We affirm.

The facts favorable to the judgment are that Cheryl Ann Wolfe Flowers, individually and as guardian for Lori Ann Wolfe and Tina Marie Wolfe (collectively referred to as the Wolfes) owned a fifty-six-acre parcel of land in fee simple. That land would eventually become the Beckoning Way Subdivision (Beckoning Way), which would be comprised of two sections. On January 10, 1995 the Wolfes conveyed thirteen acres to Michael P. Beck by warranty deed. This land eventually became Beckoning Way Section I (Section I). On May 25, 1995, Beck recorded a Declaration of Covenants of Commitments and Restriction of Beckoning Way Section One and Two (the Declaration) in the office of the Recorder of Hendricks County, Indiana. The Declaration stated that Beck was the owner of all fifty-six acres of Beckoning Way, although at the time he was the owner only of Section I. On June 8, 1995, Beck recorded the Record Plat for Section I, which consisted of ten subdivided lots

on the thirteen acres comprising Section I. The Section I Plat contained no reference to the Declaration.

Beck purchased the remaining forty-three acres of the Wolfes' property on September 25, 1995. This would become Section II of Beckoning Way. Also on that day, Beck conveyed 6 of the 10 lots in Section I to Donald E. Lambert by warranty deed. This deed did not refer to the Declaration. On September 28, 1995, Beck conveyed Section II to Lambert. On November 23, 1996, Lambert recorded the Record Plat for Section II, which consisted of 35 subdivided lots. The Section II Plat contained no reference to the Declaration.

On September 26, 2000, Lambert filed Articles of Incorporation with the Indiana Secretary of State creating the Association, a not-for-profit domestic entity. On June 19, 2006, Plunkitt purchased lot 30 in Section II. On July 24, 2006, he purchased lot 31 in Section II. Both lots were conveyed by warranty deeds, neither of which contained any reference to the Declaration. He sold Lot 31 by land contract on December 14, 2007.

After purchasing Lots 30 and 31, Plunkitt failed to pay dues and assessments levied by the Association, an obligation that was set out in the Declaration. Over time, Gemini, on behalf of the Association, sent letters and invoices to Plunkitt requesting payment of the dues and assessments, but he did not comply. Eventually, the Association hired attorney Bellamy, who sent separate letters to Plunkitt with respect to each property, attempting to collect the amounts owed. Plunkitt failed to comply with the requests.

On July 14, 2009, Bellamy filed a small claims lawsuit (Case I) against Plunkitt on the Association's behalf to collect the debt pertaining to Lot 30. In response, Plunkitt filed a third-party complaint against Bellamy and Gemini. In his third-party complaint, Plunkitt

3

alleged Bellamy and Gemini had violated the FDCPA. Bellamy filed a second small claims lawsuit (Case II) against Plunkitt on behalf of the Association on June 22, 2010. Cases I and II were consolidated for purposes of trial, which was held on February 10, 2011. The court found in favor of the Association and entered judgment against Plunkitt in the amount of $4038.

1.

This case was tried before the bench in small-claims court. In such cases, we review for clear error. *McKeighen v. Daviess Cnty. Fair Bd.,* 918 N.E.2d 717 (Ind. Ct. App. 2009). Although we are particularly deferential to the trial court in small-claims actions with respect to factual determinations and conclusions flowing from those facts, we owe no deference to a small-claims court's legal conclusions regarding questions of law, which we review de novo. *Olympus Props., LLC v. Plotzker,* 888 N.E.2d 334 (Ind. Ct. App. 2008). We will affirm a judgment in favor of a party having the burden of proof if the evidence was such that a reasonable trier of fact could conclude that the elements of the claim were established by a preponderance of the evidence. *Lowery v. Housing Auth. of Terre Haute,* 826 N.E.2d 685 (Ind. Ct. App. 2005). We presume the trial court correctly applied the law and give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Id.* We will not reweigh the evidence and we will consider only the evidence and reasonable inferences therefrom that support the trial court's judgment. *Id.* We note that the judgment rendered in favor of the Association was a general judgment in that it was unaccompanied by findings and conclusions. A general judgment will be affirmed upon any legal theory consistent with the evidence. *Clark v. Hunter,* 861 N.E.2d 1202 (Ind. Ct. App. 2007).

4

Plunkitt contends the trial court erred in determining that his property was subject to the Declaration. This is the dispositive question, i.e., were Plunkitt's lots encumbered by the obligation to pay fees and assessment to the Association? This obligation was purportedly created in the Declaration, which was filed after Beck purchased Section I but before he purchased Section II. Plunkitt points out that the relevant documents that were filed after Beck purchased Beckoning Way, including (1) the warranty deeds conveying the property to Plunkitt, (2) the Section I Plat, and (3) the Section II Plat, did not contain any reference to the Declaration. Citing exclusively cases from federal courts and the courts of sister states, Plunkitt contends that because the obligation to pay fees and assessments to the Association is not in his deeds nor in the recorded plat for Section II, but instead appears only in the Declaration, which was recorded before Beck owned Section II, his property was not encumbered by the obligation. The Association concedes the facts underlying this argument. That is, the Association admits that (1) the Declaration was filed by Beck before he owned Beckoning Way Section II, although the Declaration indicates otherwise, (2) the Declaration was not mentioned in the record plat of either Section I or II, and (3) the Declaration was not mentioned in the deeds pertaining to Plunkitt's purchase of Lots 30 and 31. The Association contends, however, that Plunkitt is estopped from claiming that he did not know of the existence of the Association and therefore, is not obligated to pay its dues and assessments. We agree.[1]

---

[1] Although we resolve this issue on grounds of estoppel, the doctrine of laches would be equally applicable. Moreover, we note that the issues that ultimately arose in this case with respect to the legitimacy of the Association's claim for dues could have been readily cured by remedial action undertaken by the Association after the initial, and irregular, filing of the Declaration in 1995.

5

Estoppel is a judicial doctrine grounded in equity. *Roberts v. ALCOA, Inc.,* 811 N.E.2d 466 (Ind. Ct. App. 2004). There are several estoppel doctrines, including collateral estoppel, equitable estoppel, judicial estoppel, promissory estoppel, estoppel by deed, and estoppel by record. *Id.* All forms of estoppel are based upon the same underlying concept: a person who, by deed or conduct, has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to the other. *Id.*

In this case, the Association performed many services for Plunkitt. There is evidence in the record that it hired managers, paid county property taxes and drainage assessments, hired landscapers to maintain common areas, provided liability insurance, maintained common drainage, and enforced the Association's restrictive covenants. Plunkitt accepted these benefits while fully aware of the existence of the Association. Plunkitt also acknowledged the Association's role and authority when, on four separate occasions, he responded to the Association's requests that he correct problems with his property relative to Beckoning Way's restrictive covenants. In fact, he actively solicited the aid of a board member of the Association in complying with the Association's requests. Moreover, there was evidence that he attended annual business meetings of the Association and in so doing

never once lodged a protest regarding his obligation to pay dues.  Finally, it is not insignificant that the Declaration was recorded in the Recorder's Office of Hendricks County in 1995 – more than ten years before Plunkitt purchased his lots in Beckoning Way.  We understand that the Declaration contained an irregularity, as explained above, but the fact remains that the Declaration was a matter of public record and purported to encumber the property notwithstanding said irregularities – irregularities that would not have been apparent on the face of the Declaration.

In summary, Plunkitt bought his property in Section II more than ten years after the duly recorded Declaration purported to create the Association and obligated property owners in Section II to Association dues.  He had, at a minimum, constructive knowledge of the existence of the Association and his obligation thereto via the recorded Declaration.  Moreover, his conduct demonstrated actual knowledge of the Association, as reflected in his attendance at Association meetings and his submission to its authority to monitor and regulate the use and appearance of his property.  He accepted the benefits of the Association for four years after purchasing his lots before he registered his refusal to pay dues on grounds that he was not encumbered by the duties set out in the Declaration based up on an irregularity that had occurred more than ten years before he purchased his property.  Under these circumstances, we conclude that he was estopped from challenging the legitimacy of the Association and the Declaration.[2]

2.

Plunkitt contends the trial court erred in denying his counterclaim for damages resulting from Gemini's alleged violations of the FDCPA. Congress passed the FDCPA to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA broadly applies to any business that uses an instrumentality of interstate commerce to collect a debt on its own or another's behalf. *Id*. at § 1692a(6). The resolution of Plunkitt's challenge in this regard centers upon one of several narrow exclusions in the Act. Liability under the FDCPA is contingent upon a party's classification as a "debt collector", which is defined as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C.A. § 1692a. This provision goes on to define several exemptions, i.e., those not subject to liability under the FDCPA, including the following: "[A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement[.]" 15 U.S.C.A. § 1692a(6)(F)(i). Gemini claims that as a property manager it

---

[2] We stress here that we do not mean by this decision to alter established law concerning encumbrances on real property. This case is decided on equitable grounds and this decision is to be construed as appropriate only on the narrow facts of this case.

8

does not fall within the primary definition of debt collector.

"[A]n agency relationship is confidential and fiduciary" and "obligates the agent to exercise the utmost good faith." *Bopp v. Brames*, 713 N.E.2d 866, 871 (Ind. Ct. App. 1999), *trans. denied*. There was evidence that Gemini provided numerous management services to the Association, only one of which was collecting resident fees. Other services include paying taxes and county drainage fees, hiring and supervising landscaping services for the common areas, and enforcing covenants. The trial court did not err in concluding that Gemini was acting in its fiduciary capacity in collecting fees from Section II property owners on behalf of the Association. As such, Gemini was not a "debt collector" within the meaning of the FDCPA and thus was not liable under its provision. *See* 15 U.S.C.A. § 1692a(6)(F)(i).

The same result attains for Bellamy, although for a different reason. Bellamy served as legal counsel for the Association in this matter. Plunkitt contends that this representation rendered Bellamy a "debt collector" within the meaning of the FDCPA. Indeed, attorneys who regularly engage in debt collection or debt collection litigation are governed by the FDCPA, and their litigation activities must comply with its requirements. *Heintz v. Jenkins*, 514 U.S. 291 (1995). "If the principal purpose of a lawyer's work is the collection of debts, he is a 'debt collector' under the Act." *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006); *see also Scott v. Jones,* 964 F.2d 314 (4th Cir.1992). Was the principal purpose of Bellamy's work the collection of debts? The evidence presented by Plunkitt failed to establish that it was.

The FDCPA speaks in terms of one who "regularly" collects debts. *See* 15 U.S.C.A. § 1692a. The Sixth Circuit Court of Appeals discussed the meaning of "regularly" in this

9

context in some detail, and we find that discussion instructive, viz.:

> for a court to find that an attorney or law firm "regularly" collects debts for purposes of the FDCPA, a plaintiff must show that the attorney or law firm collects debts as a matter of course for its clients or for some clients, or collects debts as a substantial, but not principal, part of his or its general law practice. Such an interpretation actuates the apparent purpose of Congress in creating attorney liability under the FDCPA: "[w]hile attorneys who are considered competitors of traditional debt collection companies should be covered under the Act, a firm whose debt collection activity does not approximate that of a traditional collection agency should not be suable under the act." [*White v. Simonson & Cohen, P.C.*, 23 F.Supp.2d 273, 276 (E.D.N.Y. 1998)]. In identifying such attorneys, other courts have relied upon a variety of factors, including the volume of the attorney's collection activities, the frequent use of a particular debt collection document or letter, and whether there exists a steady relationship between the attorney and the collection agency or creditor he represented. Courts have considered what portion of the overall caseload debt collection cases constitute, and what percentage of revenues derive from debt collection activities. Some have maintained that even where debt collection takes up a minor portion of a law practice, "debt collector" liability may lie where the defendant has an "ongoing relationship" with a client whose activities substantially involve debt collection.

*Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999).

The evidence Plunkitt adduced at the hearing established only that several years ago Bellamy had given educational seminars on the FDCPA, that Bellamy testified that in his litigation practice he did not "regularly initiate litigation in an attempt to collect consumer debts", although he had initiated "probably dozens" of lawsuits in a attempt to collect consumer debt. *Transcript* at 74. Although "probably dozens" implies more than a negligible number, the evidence presented by Plunkitt does not place that amount in the greater context of Bellamy's entire practice, nor does it provide any means of evaluating the various criteria identified in the above excerpt from *Schroyer* for the purpose of deciding whether Bellamy "regularly" collects debts within the meaning of the FDCPA. Accordingly,

the trial court did not err in concluding that Bellamy was not a "debt collector" within the meaning of the FDCPA and thus was not liable under its provision. *See* 15 U.S.C.A. § 1692a(6)(F)(i).

Judgment affirmed.

DARDEN, J., and VAIDIK, J., concur.